IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ISAIAH W. MCCOY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-1046 (MN) |
| | ) | |
| R. David FAVATA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **<u>MEMORANDUM OPINION</u>**

Herbert W. Mondros, MARGOLIS EDELSTEIN, Wilmington, DE – attorneys for Plaintiff

Aaron R. Goldstein, Joseph C. Handlon, Deputy Attorneys General, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE – attorneys for Defendants Matthew Denn, Gregory Babowal, Stephen Smith, and Deborah Weaver

Michael F. McTaggart, Deputy Attorney General, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE – attorney for Defendants Nathaniel McQueen, Jr. and Mark Ryde

Ryan P. Connell, Deputy Attorney General, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE – attorney for Robert M. Coupe, David Pierce, Marcello Rispoli, Todd Drace, and George Gill

March 29, 2019
Wilmington, Delaware

*Maryellen Noreika*

**NOREIKA, U.S. DISTRICT JUDGE**:

Before the Court are four motions: three motions to dismiss for failure to state a claim, filed on September 29, 2017, by (1) Defendants Nathaniel McQueen, Jr. and Mark Ryde ("DSP Defendants") (D.I. 17), (2) Defendants Gregory Babowal, Matt Denn, and Stephen Smith ("Prosecutor Defendants") (D.I. 20), and (3) Defendants Robert M. Coupe, David Pierce, Marcello Rispoli, Todd Drace, and George Gill ("DOC Defendants") (D.I. 23), as well as one motion (D.I. 28), filed on October 20, 2017, by Defendant Deborah Weaver (D.I. 28), to join the Prosecutor Defendants' motion to dismiss. Plaintiff opposes the motions to dismiss (D.I. 36, 37, 38), but does not oppose Weaver's motion to join.[1]

For the reasons set forth below, the Court GRANTS the motions to dismiss of DSP Defendants (D.I. 17), Prosecutor Defendants (D.I. 20), and DOC Defendants (D.I. 23).

## I.   BACKGROUND

This litigation stems from the investigation, prosecution, conviction, and incarceration of Plaintiff Isaiah McCoy ("Plaintiff" or "McCoy") for the May 4, 2010 murder of James Munford. (D.I. 1 ¶ 85; *see also id.* ¶¶ 1-3). On July 6, 2010, Plaintiff was indicted for the murder of Munford. *See State v. McCoy*, No. 1005008059A, 2012 WL 5552033, at *1 (Del. Super. Ct. Oct. 11, 2012). The first trial was prosecuted by Defendants Favata and Weaver. (D.I. 1 ¶¶ 39, 49). Plaintiff represented himself *pro se* with the aid of stand-by counsel. (*See, e.g., id.* ¶ 169). On June 29, 2012, the jury returned a guilty verdict against Plaintiff for the murder of James Munford. (*Id.* ¶ 164). On October 11, 2012, the court sentenced Plaintiff to death. (*Id.* ¶ 171).

Plaintiff filed for post-conviction relief and, on January 20, 2015, the Delaware Supreme Court reversed his conviction and remanded the case for a new trial. (*Id.* ¶ 153). Explaining the

---

[1]      The Court also grants Weaver's motion to join (D.I. 28) as unopposed.

reversal, the Delaware Supreme Court noted that the trial court had committed a "reverse-Batson" error and that Defendant Favata engaged in a number of improper actions during the prosecution of the case. *See generally McCoy v. State*, 112 A.3d 239 (Del. 2015). The Delaware Supreme Court also found that, "[a]lthough there was no physical evidence linking McCoy to the crime, the record does not support McCoy's argument that the evidence was insufficient to convict him." *Id.* at 268.

After remand, Plaintiff's second trial – a ten-day bench trial – began on January 9, 2017. (D.I. 1 ¶ 192). The second trial was prosecuted by Defendants Babowal and Smith. (*Id.* ¶¶ 52, 56-57). McCoy was represented by counsel. After trial, on January 19, 2017, Plaintiff was found not guilty of the murder of Munford and released from prison. (*Id.* ¶ 194, 197).

On July 28, 2017, Plaintiff filed the Complaint in this case. (D.I. 1). Plaintiff's Complaint includes seven counts against twelve defendants, and the counts raise various theories of liability arising under federal and state law.

## A.     The Defendants

The twelve Defendants in this action had roles in the investigation, prosecution or incarceration of Plaintiff. The individual defendants are briefly summarized below.

- Defendant Ryde was a homicide detective employed with the Delaware State Police. (D.I. 1 ¶ 59).He was assigned as lead investigator in the shooting death of Munford. (*Id.* ¶ 61).

- Defendant Coupe was the Superintendent of the Delaware State Police at the time of its investigation into Plaintiff's involvement in Munford's death. (*Id.* ¶ 69). He later went on to become Commissioner of the Department of Corrections in early 2013. (*Id.* ¶ 72). Defendant McQueen was the Superintendent of the Delaware State Police from December 20, 2012 during the investigation into Plaintiff, and he continued to hold that position during Plaintiff's retrial. (*Id.* ¶ 73). According to the Complaint, both Coupe and McQueen were responsible for training and supervising all Delaware State Police detectives, including Ryde. (*Id.* ¶¶ 70, 74).

- Defendant Favata was a prosecutor with the Delaware Department of Justice, and he was the "lead prosecutor" in the first trial of Plaintiff. (*Id.* ¶ 39).

- Defendant Weaver was likewise a prosecutor with the Department of Justice and worked on Plaintiff's first trial. (*Id.* ¶ 49).

- Defendant Denn was the Attorney General for the State of Delaware from January 2015 until January 2019. (*Id.* ¶ 25). According to the Complaint, Denn was involved in overseeing the retrial of Plaintiff, and "Denn and his predecessor" were also purportedly responsible for training and supervising Department of Justice prosecutors including, *inter alia*, Favata and Weaver. (*Id.* ¶ 33).

- Defendants Babowal and Smith were prosecutors with the Department of Justice who worked on Plaintiff's second trial. (*See id.* ¶¶ 52, 55-56). According to the Complaint, Smith was specifically hired by Denn to prosecute Plaintiff in the second trial. (*Id.* ¶ 56).

- Defendant Pierce was the Warden of the James T. Vaughn Correctional Center where Plaintiff was incarcerated until he was released in January of 2017. (*Id.* ¶¶ 76, 197).

- Defendants Rispoli, Drace and Gill were corrections officers at the James T. Vaughn Correctional Center while Plaintiff was incarcerated there. (*Id.* ¶¶ 77-79).

**B.     Allegations re: the Investigation and the First Trial**

Plaintiff alleges that Defendants Ryde, Favata, and Weaver conducted a constitutionally deficient investigation into Munford's death. (D.I. 1 ¶ 110). Plaintiff contends, *inter* alia, that the investigation identified several eyewitnesses to the shooting who did not identify him as being present at the scene, and the investigation included no forensic or physical evidence placing him at the scene. (*Id.* ¶¶ 93-95, 98). Plaintiff acknowledges that two witnesses, Deshaun White and Reykeisha Williams, identified him as being present at the shooting. (*Id.* ¶ 96). Plaintiff alleges, however, that Defendant Ryde "failed to conduct an investigation to discover evidence that would have corroborated or refuted the patently incredible and ever-changing versions of the stories told by White and Williams" (*id.* ¶ 67), and that Defendants Ryde, Weaver, and Favata "employed discredited interrogation techniques including lying to White and Williams in order to induce them

to provide false testimony against Plaintiff McCoy" (*id.* ¶ 118). Plaintiff alleges that White and Williams received "sweet plea deals" in exchange for their testimony against Plaintiff. (*Id.* ¶ 96). According to Plaintiff, Defendants Ryde, Weaver and Favata suggested to those witnesses that Plaintiff was responsible for the murder. (*Id.* ¶ 97).

On May 11, 2010, based *inter alia* on information from White and Williams, Defendant Ryde swore an affidavit in support of an arrest warrant, which was issued by a Justice of the Peace. (Id. ¶¶ 121-22). Plaintiff alleges that the "affidavit in support of the arrest warrant for Plaintiff McCoy contained material misstatements concerning the content of the surveillance of the videotape and the statements given to Defendant Ryde by Reykeisha Williams." (*Id.* ¶ 121). Plaintiff further alleges that Ryde did not consult "several detectives who were trained in the technology of gunshot residue," that "no detective was asked to reconstruct the shooting of Mr. Munford and no detective made any attempt to reconstruct that crime," and that Ryde failed to re-interview certain eyewitnesses. (*Id.* ¶¶ 124, 129, 138).

Plaintiff also contends that Favata engaged in prosecutorial misconduct during the first trial by belittling Plaintiff, vouching for witnesses, interfering with Plaintiff's right to represent himself at trial, interfering with his communications with stand-by counsel, lying to the trial judge, and provoking and threatening Plaintiff. (*Id.* ¶ 6). Favata was reprimanded by the trial judge for his conduct. (*Id.* ¶ 153).

### C. Allegations re: the Second Trial

Plaintiff asserts that certain Defendants improperly tried him a second time for the death of Munford. (*See* D.I. 1 ¶¶ 172-193). In particular, Plaintiff alleges that Defendants Denn, Ryde, Babowal and Smith knew there was "no credible evidence to support the charges that Plaintiff McCoy was involved in the shooting" but nevertheless attempted to retry Plaintiff and again seek

the death penalty. (*Id.* ¶ 172). Plaintiff contends that, although these four Defendants knew that crucial eyewitness testimony implicating Plaintiff was "completely unreliable," the Defendants made no attempt to search for evidence that would either corroborate or refute the eyewitness testimony. (*Id.* ¶¶ 173-175). In fact, according to Plaintiff, Defendants Denn, Ryde, Babowal and Smith had knowledge of "independent evidence" that contradicted the eyewitness testimony. (*Id.* ¶ 177). According the Complaint, the retrial and continued pursuit of the death penalty was "in bad faith" because Defendants Denn, Ryde, Babowal and Smith knew there was "insufficient evidence to convict Plaintiff." (*Id.* ¶ 178).

During the pursuit of the second trial, according to Plaintiff, Defendants Denn, Ryde, Babowal and Smith attempted to negotiate a plea deal with Plaintiff. (*Id.* ¶ 181). Plaintiff alleges that he was "threatened" with a sentence of life in prison (if convicted at trial) in the hopes that would plead guilty to manslaughter. (*Id.* ¶ 184). Plaintiff suggests that this plea offer, which was allegedly authorized by Denn, was an attempt to "save face" and avoid an acquittal in the retrial. (*Id.* ¶¶ 187-188). In response to the plea offer, Plaintiff alleges that he offered to take a polygraph test if the eyewitnesses implicating him would do the same. (*Id.* ¶ 189). According to Plaintiff, Defendants rejected the polygraph offer because they knew their "star witnesses . . . were not being truthful." (*Id.* ¶ 190). Plaintiff alleges that, during the second trial where he was ultimately acquitted, "the State"[2] knowingly, "maliciously" and "in bad faith" offered eyewitness testimony that was "unreliable, biased, contradictory, incredible, unsupported by any forensic evidence and refuted by eyewitness statements." (*Id.* ¶ 193).

---

[2]     Plaintiff does not indicate who "the State" is or provide specific factual allegations to support his assertions.

### D.     Allegations re: Incarceration

From May 2010 until his release on January 19, 2017, Plaintiff was incarcerated in the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware.  (D.I. 1 ¶ 13; *see also id.* ¶¶ 15, 24).  Plaintiff alleges that, for "the vast majority of [his incarceration, he] was held in solitary confinement in the [security housing unit] at JTVCC," including the time "while he was a pre-trial detainee."  (*Id.* ¶¶ 199-200).  In the security housing unit, Plaintiff was "permitted to leave his cell for only forty-five minutes, three times a week."  (*Id.* ¶ 201).  Moreover, Plaintiff alleges that while he was in the security housing unit, certain unnamed "Prison Defendants" "beat and tortured [him]," "allowed other Department of Corrections personnel and other inmates to beat and torture [him]," "denied [him] proper medical care," "emotionally and psychologically abused [him]," "spat in [his] food," "denied [him] access to the law library and denied him access to his legal counsel," "transported [him] . . . in small and highly dangerous prison vans," and "provoked [him], and charged him with and convicted him of disciplinary violations without just cause or due process."  (Id. ¶¶ 203-210).

## II.     **<u>LEGAL STANDARDS</u>**

When a complaint is challenged by a Rule 12(b)(6) motion to dismiss, the Court conducts a two-part analysis.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions."  *Id.* at 210-11.  Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  To withstand a Rule 12(b)(60 motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its fact.'"  *Iqbal*, 556, U.S. at 678 (quoting *Bell Atl.*

*Corp. v.* Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

## III.  <u>DISCUSSION</u>

As noted above, Plaintiff's Complaint includes seven counts against twelve defendants, raising numerous theories of liability under federal and state law. Counts I, II, III, and IV include claims against various Defendants and will be evaluated in turn. Counts V, VI, and VII are solely pled against Defendant Favata, who has yet to be served with process in this case. Those Counts, as well as any allegations specific to Favata in Counts I-IV are not addressed in this opinion.

**A.      Count I: Malicious Prosecution, Deprivation of Liberty Without Due Process of Law, False Arrest, And Denial of The Right to Counsel And The Right to a Fair Trial, Assault, and Deliberately Failing to Conduct a Constitutionally Adequate Investigation 42 U.S.C. §1983**

Plaintiff asserts Count I against Defendants Favata, Denn, Weaver, Smith, Babowal, Coupe, McQueen, and Ryde.[3]  (*See* D.I. 1 at pg. 48).  Plaintiff asserts that:

> [Defendants] acting individually and in concert with one another and with malice and specific knowledge that probable cause did not exist to arrest, detain or prosecute Plaintiff McCoy for the death of Mr. Munford, nevertheless intentionally caused Plaintiff McCoy to be arrested, detained, charged, and prosecuted, convicted and sentenced for that crime, thereby violating Plaintiff McCoy's clearly established rights, under the Fourth and Fourteenth Amendments of the United States Constitution to be free of prosecution absent probable cause.

(*Id.* ¶ 226).  He alleges that they "unreasonably relied on biased unreliable, contradictory and uncorroborated witnesses."  (*Id.* ¶ 227).  And that "Defendants failed to conduct any reasonable investigation into the death of Mr. Munford, which resulted in an unlawful arrest and prosecution of Plaintiff McCoy."  (*Id.* ¶ 228).  Plaintiff further alleges that "[a]s a result of Defendants' actions, Plaintiff McCoy was denied his rights to counsel and to a fair trial." (*Id.* ¶ 232).

"Section 1983 provides a cause of action against 'every person who,' under the color of state law, 'subjects, or causes to be subjected,' another person to a deprivation of a federally protected right."  *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd other grounds*, 135 S. Ct. 2042 (2015).  The Third Circuit has repeatedly held that

---

[3]      It is wholly unclear from the pleading which of the many listed offenses in Count I Plaintiff is asserting against any one of the eight defendants named in the Count.  In his opposition to the motion to dismiss (D.I. 37), McCoy clarifies with respect to certain claims (*e.g.*, he states that he is not pursuing the false arrest claim and the right to counsel and right to a fair trial claim against Defendants, Coupe, McQueen, and Ryde (*id.* at 7, n. 1)), but he does not clarify as to all.  To the extent Plaintiff's allegations against any given defendant are not clear, they are dismissed for failure to give fair notice of the claims and the grounds upon which they rest.  *Twombly*, 550 U.S. at 554-55.

"[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*" but rather "a plaintiff must plead that each Government-official defendant, through the official's own action, has violated the Constitution.'" *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 676). Two exceptions to the bar on supervisor liability exist:

> First, "liability may attach if [a supervisor-defendant], 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct."

*Barkes*, 766 F.3d at 316 (alterations in original) (citations omitted) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).

### 1.    Defendant Denn

Defendant Denn was the Attorney General for the State of Delaware from January 2015 through the time of Plaintiff's acquittal. (*Id.* ¶ 25). Plaintiff does not specific which of the offenses in Count I it asserts against Denn, but alleges that "Defendant Denn succeeded to the liabilities of his predecessor . . . who oversaw the . . . constitutionally deficient initial investigation and prosecution of Plaintiff McCoy," and that Denn personally oversaw Plaintiff's retrial. (*Id.* ¶¶ 30-31). Further, Plaintiff alleges that Denn "negligently hired, trained, supervised and retained Department of Justice prosecutors." (*Id.* ¶ 33). In several places in the Complaint, Plaintiff alleges that Denn took actions with respect to the initial investigation and prosecution of Plaintiff, but those all occurred prior to Denn's election as Attorney General. (*Id.* ¶¶ 123-124, 137-138). Lastly, Plaintiff contends that Denn hired Defendant Smith "specifically for the prosecution of Plaintiff McCoy" (*id.* ¶ 31), that Denn sought to retry Plaintiff after the Supreme Court of Delaware

reversed his conviction, and that Denn later authorized a plea offer of manslaughter to Plaintiff for purportedly politically motivated reasons (*id.* ¶¶ 172, 184, 188).

As a preliminary matter, Denn does not succeed to any liability of actions taken by his predecessor. Section 1983 liability is premised on the personal involvement of a defendant in the alleged wrongdoing. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). As Plaintiff admits in his Complaint, Denn did not become the Delaware Attorney General until January 2015 (D.I. 1 ¶ 25), and thus the Court only considers allegations against Denn that occurred after that date. Those allegations include: the hiring of Defendant Smith, the decision to retry Plaintiff, and the offer of a plea deal prior to Plaintiff's second trial. (*Id.* ¶¶ 31, 172, 184, 188).

Denn argues that the claims against him are barred by absolute immunity because the allegations made are "entirely based upon prosecutorial conduct." (D.I. 21 at 7). The Supreme Court has held prosecutors are absolutely immune from actions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Whether a prosecutor is entitled to this immunity depends on whether they establish that their actions occurred while they were functioning as the state's "advocate." *Yarris v. County of Delaware*, 465 F.3d 129, 136 (3rd Cir. 2006) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993)). "[A]bsolute immunity does not extend to '[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'" *Yarris*, 465 F.3d at 135 (quoting *Buckley*, 509 U.S. at 273). In determining prosecutorial immunity questions, the Court "must ascertain just what conduct forms the basis for the plaintiff's cause of action, and it must then determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir.2011). "[An] official seeking absolute immunity

bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S 478, 486 (1991).

As to the allegations that Denn committed any offenses involving the decision to retry Plaintiff and to offer a plea deal for manslaughter,[4] Denn has absolute immunity. "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley*, 509 U.S. at 273; *see also Kalina v. Fletcher*, 522 U.S. 118, 126 (1997). Decisions to retry a defendant and to offer a plea deal to secure a conviction without retrial are examples of conduct that are quintessentially prosecutorial and taken in the role as state advocate. *See, e.g.*, *Stankowski v. Farley*, 487 F. Supp. 2d 543, 552 (M.D. Pa. 2007) (finding the negotiation of a plea bargain is conduct "intimately associated with the judicial phase of the criminal process").

As to claims relating to allegations that Denn hired Smith "specifically for the prosecution of Plaintiff McCoy" (D.I. 1 ¶ 31), it appears (though is by no means clear) that Plaintiff is asserting a negligent hiring or inadequate supervision claim under § 1983. (*See also* D.I. 1 ¶ 33) (alleging Denn "negligently hired, trained, supervised and retained Department of Justice prosecutors such as Defendants Favata and Weaver"). The Third Circuit has held that "claims of negligent hiring, inadequate supervision, screening, and training" brought pursuant to § 1983 "must show that there

---

[4]     Plaintiff's Complaint generally states that "Defendants offered Plaintiff McCoy a plea to manslaughter" (D.I. 1 ¶ 184), but later specifies that "Defendant Denn authorized the plea offer" (*id.* ¶ 188). To the extent that these claims attach to Denn in his supervisory role over Smith and Babowal in the second trial, they fail. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 345 (2009) (supervisory prosecutors also receive absolute immunity for conduct implicating their advocacy function). Plaintiff himself asserts that "Defendant Denn undertook no meaningful review of the case before authorizing and commencing the retrial." (D.I. 1 ¶ 32).

was a constitutional violation." *L. H. v. Pittston Area Sch. Dist.*, 666 F. App'x 213, 217-18 (3d Cir. 2016) ("Appellants cannot recover under any of these theories for the simple reason that they have failed to establish an underlying constitutional violation." (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978))). As discussed *infra*, Plaintiff has not sufficiently pleaded an underlying constitutional violation, and thus any claim for negligent hiring, training or supervision by Denn fails.[5]

### 2.     Defendants Coupe and McQueen

Defendant Coupe was the Superintendent of the Delaware State Police ("DSP") during the investigation of Plaintiff for the murder of Mr. Munford. (D.I. 1 ¶ 69). Plaintiff alleges that "Coupe was grossly negligent in training, supervising, and retaining Defendant Ryde and other State Police officers and detectives." (*Id.* ¶ 71). Defendant McQueen has been the Superintendent of the DSP since December 20, 2012. (*Id.* ¶ 73). Plaintiff alleges that "McQueen's training, supervising, and retaining of Defendant Ryde was constitutionally deficient." (*Id.* ¶ 75). Plaintiff alleges that, together, "McQueen and Coupe were grossly negligent in hiring, training, supervising, and retaining Defendant Ryde." (*Id.* ¶ 113). The Complaint makes no additional allegations against Defendants Coupe or McQueen with respect to their roles as Superintendent of DSP during Plaintiff's first and second murder trials, respectively.[6]

*Twombly*, *Iqbal*, and their progeny require that a complaint include more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S.

---

[5]     Although the Court does not address the constitutional violations asserted against Favata, there are no allegations that Denn had a role in hiring, training or supervising Favata in connection with the conduct underlying the claims against Favata.

[6]     With respect to Coupe, however, Plaintiff asserts that "Defendant Coupe was also the Commissioner of the Department of Corrections beginning in March 2013, and thus oversaw the cruel and inhumane treatment of Plaintiff McCoy while he was incarcerated." (D.I. 1 ¶ 72).

at 555; *see also Iqbal*, 556 U.S. at 678. In *Iqbal*, the Supreme Court explained that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Further, the Court noted that "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* In *Iqbal*, even where the plaintiff argued that the defendants were "the 'principal architect'" and "instrumental" in adopting an allegedly unconstitutional policy, the Court held that "[the] complaint has not 'nudged [his] claims" . . . 'across the line from conceivable to plausible'" because "the allegations [were] conclusory and not entitled to be assumed true." *Id.* at 680-81 (quoting *Twombly*, 550 U.S. at 570). Here, Plaintiff simply offers the legal conclusion that McQueen and Coupe were "grossly negligent" with respect to the employment and supervision of Defendant Ryde and unnamed others and does not identify any of the elements that would support a claim for failure to train or supervise or allege any factual support for such a claim. Plaintiff's claims against Coupe and McQueen for "hiring, training, supervising, and retaining Defendant Ryde" fail to state a claim upon which relief may be granted and must therefore be dismissed.

In his opposition to the motion to dismiss (D.I. 37), Plaintiff states that he also "is pursuing the assault claim against Defendant Coupe while he served as the Commissioner of the Department of Corrections" and that "[t]hose claims are addressed in the Opposition of Plaintiff Isaiah McCoy to the DOC Defendants' Motion to Dismiss." (*Id.* at 7 n.1). To the extent that this allegation is related to the assault claim identified in Count I, Plaintiff's claim fails. Section 1983 requires that Plaintiff plead sufficient factual support to allow the Court to plausibly infer that a specific Defendant had personal involvement in the deprivation of Plaintiff's constitutional rights. Here,

Plaintiff has alleged no facts that support a plausible inference that Coupe is any more than ***possibly*** responsible for wrongdoing.

Plaintiff argues Coupe "oversaw the cruel and inhumane treatment of Plaintiff McCoy." (D.I. 1 ¶ 72).  Not only is this a conclusory statement that may be disregarded under *Iqbal*, but this allegation also fails to include any facts to suggest that Coupe participated in an assault, directed others to assault Plaintiff, or knew of the assault(s) of Plaintiff and acquiesced.  Furthermore, Plaintiff makes no allegation that Coupe "established and maintained a policy, practice or custom" that directly caused an assault against Plaintiff and, therefore, Plaintiff cannot meet the limited exceptions to the bar on supervisory liability in § 1983 actions described in *Barkes*.  *See Barkes*, 766 F.3d at 316.  Thus, Plaintiff has failed to sufficiently plead a claim of assault against Coupe.

### 3.  Defendant Ryde

Defendant Ryde is a homicide detective with the DSP and the lead detective assigned to investigate the murder of James Munford.  (D.I. 1 ¶¶ 59-60).  Plaintiff's claims against Ryde relate to his allegations that Ryde's investigation of Plaintiff for the murder of Munford was "constitutionally defective."  (*Id.* ¶ 62).[7]  Plaintiff alleges that Ryde "decided Plaintiff McCoy was the person who shot Mr. Munford" and Ryde "arrested Dashaun White and Reykeisha Williams for the murder of Mr. Munford . . . and suggested to both perpetrators that Plaintiff McCoy was the shooter."  (*Id.* ¶¶ 63-64).  Plaintiff further alleges that Ryde, "[i]n conjunction with Defendants Favata and Weaver . . . offered sweet plea deals to White and Williams if they testified that Plaintiff McCoy was responsible for the homicide" and that "Ryde made knowingly false statements and

---

[7]     In one of his opposition papers, Plaintiff accuses Ryde of violation of due process, failure to conduct a proper investigation, and malicious prosecution.  (*See* D.I. 37 at 6-7).

failed to disclose material information in and (sic) affidavit and warrant presented to and signed by the trial court which was used to arrest Plaintiff McCoy." (*Id.* ¶¶ 65-66).

According to the Complaint, Ryde "failed to conduct an investigation to discover evidence that would have corroborated or refuted the patently incredible and ever-changing versions of the stories told by White and Williams" and Ryde "employed discredited interrogation techniques including lying to White and Williams in order to induce them to provide false testimony against Plaintiff McCoy." (*Id.* ¶¶ 67, 118). Plaintiff alleges that "Ryde's May 11, 2010 affidavit in support of the arrest warrant for Plaintiff McCoy contained material misstatements concerning the content of the surveillance of the videotape and the statements given to Defendant Ryde by Reykeisha Williams." (*Id.* ¶ 121). Plaintiff further alleges that Ryde did not consult "several detectives who were trained in the technology of gunshot residue," that "no detective was asked to reconstruct the shooting of Mr. Munford and no detective made any attempt to reconstruct that crime," and that Ryde failed to re-interview certain eyewitnesses. (*Id.* ¶¶ 124, 129, 138).

Plaintiff combines his due process and improper investigation claims, stating that "[b]y obtaining an arrest warrant without any investigation into whether there as (sic) probable cause to arrest Plaintiff McCoy, the DSP defendants violated his substantive due process rights to life and liberty" and Plaintiff calls the claims "necessarily intertwined." (D.I. 37 at 2, 7-8). Thus, the Court will review these claims together, and the malicious prosecution claim will be addressed separately.

a.  Due Process/Constitutionally Deficient Investigation

"[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96

(1989)).[8]  The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  Here, Plaintiff claims that the failure to conduct a legitimate investigation into the murder of James Munford cost Plaintiff "his liberty and almost his life," thereby implicating the due process clause. (D.I. 37 at 8).

The due process clause "requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty."  *Baker v. McCollan*, 443 U.S. 137, 142-43 (1979).  Due process arising under the Fourteenth Amendment is satisfied upon the issuance of an arrest warrant predicated upon probable cause, and where due process is satisfied, a claim arising from an allegedly inadequate investigation cannot be maintained.  *See Lincoln v. Hanshaw*, 375 F. App'x 185, 190 (3d Cir. 2010).  Moreover, the Third Circuit has found that "in a section 1983 malicious prosecution action . . . a grand jury indictment or presentment constitutes prima facie evidence of probable cause to prosecute . . . ."  *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989).  To rebut such evidence, a plaintiff must show "that the presentment was procured by fraud, perjury or other corrupt means."  *Id.*

Here, Plaintiff was indicted for the murder of James Munford on July 6, 2010.  *See McCoy*, 2012 WL 5552033, at *1.  The Complaint includes no allegations (or factual support) that the grand jury indictment was procured by fraud, perjury or other corrupt means.  In his response to the DSP Defendants' motion to dismiss, Plaintiff argues "it is believed that the indictment was obtained using these same misrepresentations and omissions with which the affidavit was obtained." (D.I. 37 at 15).  Plaintiff cannot, however, use his brief opposing a Rule 12(b)(6) motion

---

[8]     Here, Plaintiff's Complaint does not actually link the allegations of a due process violation with those relating to a constitutionally deficient investigation.  The Court, however, will accept – for the purposes of this motion – that they are necessarily intertwined.

to dismiss to assert new theories or factual matter omitted from the Complaint.  *See Commw. of Pa. ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal quotations marks and citation omitted)); *see also Schwartz v. OneWest Bank, FSB*, 614 F. App'x 80, 83 n.2 (3d Cir. 2015) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of . . . complaints." (citing *Frederico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007))).  Because Plaintiff was indicted by a Delaware grand jury and failed to allege (with factual support) that fraud, perjury, or some other corrupt means undergird the grand jury process, the Court finds that Plaintiff has failed to plead the requisite elements for a violation of the Fourteenth Amendment's due process clause stemming from the investigation of Plaintiff for the murder of Munford.  Plaintiff's claim against Ryde of a constitutionally deficient investigation fail.

b.    Malicious prosecution

Plaintiff has failed to plead a § 1983 claim for malicious prosecution.  The elements of such a claim are "(1) the defendant[] initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant[] acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."  *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).  Defendant Ryde argues that a malicious prosecution "claim fails as a matter of law because . . . probable cause existed for the plaintiff's arrest" and points to the indictment of Plaintiff as "*prima facie* evidence of probable cause." (D.I. 18 at 16).  Plaintiff's failure to allege in the Complaint that his indictment was procured by fraud, perjury, or other corrupt means necessarily means that he has failed to

plead the requisite third element of a malicious prosecution claim – *i.e.*, that his criminal proceeding was initiated without probable cause. Plaintiff has failed to state a claim against Defendant Ryde for malicious prosecution.[9]

### 4. Defendants Smith & Babowal

Defendants Smith and Babowal are prosecutors for the Delaware Department of Justice who prosecuted Plaintiff at his second trial. (D.I. 1 ¶¶ 52, 55). Plaintiff alleges that Smith and Babowal "conspired to induce Plaintiff McCoy to accept a guilty plea to a crime they knew he was not involved in and that the State could not prove, and when Plaintiff McCoy refused to accept the plea offer, maliciously prosecuted Plaintiff McCoy in a second trial." (*Id.* ¶¶ 53, 57). Plaintiff also alleges that Smith and Babowal, along with (Ryde, Favata, Weaver and Denn) failed to conduct a proper investigation, ignored exculpatory evidence prior to charging him, and did not re-interview witnesses who "did not support their prosecution." (*Id.* ¶¶ 123-24, 137-38).

As discussed above, § 1983 liability is contingent upon personal involvement in the alleged wrongdoing. *Evancho*, 423 F.3d at 353. Here, there is nothing specific alleged as to Smith or Babowal's role in the purported failure to conduct a proper investigation, ignoring evidence, and re-interviewing certain witnesses. And the basis of those allegations – to the extent pleaded at all – are events that occurred prior to Plaintiff's first trial and before Smith and Babowal were involved in his prosecution. Thus, Defendants Smith and Babowal cannot be liable for these actions.

This leaves Plaintiff's allegations that Smith and Babowal offered Plaintiff a plea deal for a lesser crime and elected to pursue a second trial when that deal was refused. As discussed above,

---

[9] To the extent that Plaintiff intended to assert malicious prosecution against any of the other Defendants listed in Count I, those claims likewise fail for the reasons stated regarding Defendant Ryde.

prosecutors enjoy absolute immunity for those actions "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. Decisions to retry a defendant and to offer a plea deal to secure a conviction without retrial fall squarely under the umbrella of prosecutorial conduct taken in the role as state advocate. For this reason, Smith and Babowal are absolutely immune to § 1983 claims arising from the initiation of Plaintiff's retrial and their decision to offer a plea deal for the lesser crime of manslaughter.[10]

### 5.    Defendant Weaver

Defendant Weaver was a prosecutor at Plaintiff's first murder trial. (D.I. 1 ¶ 49). The Complaint alleges that Weaver, in conjunction with other defendants, "offered sweet plea deals to White and Williams if they testified that Plaintiff McCoy was responsible for the homicide," "employed discredited interrogation techniques including lying to White and Williams," "failed to conduct even the most fundamental investigation in an effort to find evidence to corroborate or refute the statements of White and Williams," ignored exculpatory evidence, and "engaged in egregious and pervasive misconduct throughout the investigation and First Trial of Plaintiff McCoy." (*Id.* ¶¶ 65, 117, 123, 137, 144). Plaintiff does not identify the purported "egregious and pervasive misconduct" specifically undertaken by Weaver, but instead alleges she "was present throughout the trial and passively observed, permitted, and enabled Defendant Favata's misconduct." (*Id.* ¶ 145). Plaintiff asserts that during the trial court's admonishment of Favata for misconduct towards McCoy, the Court addressed Favata directly and stated "[y]ou, sir, are an experienced trial lawyer and I expect some better conduct out of you and Ms. Weaver [co-counsel]

---

[10]     Additionally, as noted above (n.9), Plaintiff has failed to plausibly plead a claim of malicious prosecution against Defendants Smith and Babowal. The grand jury indictment is *prima facie* evidence of probable cause, and Plaintiff has failed to make out a claim for malicious prosecution.

to some extent. Ms. Weaver is less culpable than you are in my opinion." (*Id.* ¶ 153). Plaintiff concludes "Weaver was present for all of Defendant Favata's misconduct during Plaintiff McCoy's First Trial, and adopted, acquiesced in, ratified, covered up, failed to prevent and failed to report that misconduct." (*Id.* ¶ 157). Lastly, the Complaint alleges that, following the conviction at the first trial, Weaver "bragged to the press" saying "[a]ll the evidence that was taken together with corroborated testimony put together the crime as it happened" and "[t]he *pro se* factor was very challenging." (*Id.* ¶¶ 167-69).

In the Complaint, Plaintiff does not state which of his constitutional rights were allegedly violated by Weaver. *See West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."). Instead, Plaintiff alleges claims based on malicious prosecution, failing to "conduct any reasonable investigation," "passively observ[ing], permit[ting], and enabl[ing] Defendant Favata's misconduct," offering a witness a plea deal, using "discredited interrogation techniques," and bragging to the press.

a. <u>Malicious Prosecution</u>

As previously addressed, the grand jury indictment is *prima facie* evidence of probable cause. Plaintiff has failed to plead any facts sufficient to rebut that evidence, and Plaintiff has failed to make out a claim for malicious prosecution.

b. <u>Inadequate investigation</u>

Again, as previously discussed, "an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." *Graw*, 68 F. App'x at 383. To the extent that Plaintiff claims that the failure to conduct a legitimate

investigation into the murder of James Munford violated his due process rights, his claim fails for the reasons discussed supra with respect to Defendant Ryde.

### c. Observing, permitting, and enabling Favata's conduct

Plaintiff has failed to state a claim alleging Weaver's liability for Defendant Favata's conduct. The Complaint alleges that Weaver "passively observed, permitted, and enabled Defendant Favata's misconduct." (D.I. 1 ¶ 145). This accusation is insufficient to establish liability against Weaver because § 1983 liability must be premised on ***personal*** involvement by a defendant in alleged wrongdoing. *See Evancho*, 423 F.3d at 353. Though a limited exception to this rule extends to supervisory liability "if they participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations," *Thomas v. Bd. of Educ. of Brandywine Sch. Sch. Dist.*, 759 F. Supp. 2d 477, 496 (D. Del. 2010) (citing *A.M.*, 372 F.3d at 586), the Complaint makes no allegation that Weaver participated in Favata's actions, directed Favata to act, or was in a supervisory position with respect to Favata. Thus, where Plaintiff has failed to plead personal involvement by Weaver in Favata's alleged wrongdoing, and the Complaint provides no factual allegations to plausibly suggest that the limited exception for supervisory liability applies to Weaver, this claim fails.

### d. Offering plea deal

Plaintiff claims that Weaver "offered sweet plea deals to White and Williams if they testified that Plaintiff McCoy was responsible for the homicide." (D.I. 1 ¶ 65). As discussed above, prosecutors are absolutely immune from those actions "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. Moreover, the Supreme Court has "noted in particular that an out-of-court 'effort to control the presentation of [a] witness' testimony' was entitled to absolute immunity because it was 'fairly within [the prosecutor's]

function as an advocate.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-73 (1993) (quoting *Imbler*, 424 U.S. at 430, n.32)). Here, the decision to offer a plea deal to a witness in exchange for their testimony at trial is quintessentially an action intimately associated with the judicial phase of the criminal process and thus entitled to absolute immunity protection.

e.     Discredited techniques and statements to the press

Plaintiff claims that Weaver "employed discredited interrogation techniques" and "bragged to the press" following Plaintiff's conviction. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Beyond alleging that Weaver took the actions above, the Complaint is devoid of any explanation of which right secured by the Constitution she violated. Without an understanding of which constitutional rights these actions allegedly violate, the Court cannot find that the Complaint plausibly raises a § 1983 claim.

**B.     Count II: Civil Conspiracy Under 42 U.S.C. § 1983**

Count II is asserted against Defendants Favata, Weaver, Ryde, Coupe, McQueen, Denn, Babowal, and Smith. (*See* D.I. 1 at 49). Plaintiff asserts that Defendants, "acting within the scope of their employment and under color of state law, agreed among themselves and with other individuals in the DSP and DDOJ, to act in concert in order to deprive Plaintiff McCoy of his clearly established Fourth, Fifth and Fourteenth Amendment rights to be free from (i) unreasonable searches and seizures, (ii) false arrest, (iii) false imprisonment, (iv) malicious prosecution, (vii) deprivation of liberty without due process of law, (viii) cruel and unusual punishment, (ix)

interference with his right to counsel and (x) interference with his right to a fair trial." (*Id.* ¶ 235). Plaintiff alleges Defendants undertook numerous overt acts in furtherance of the conspiracy.[11]

To prevail on a civil conspiracy claim under § 1983, Plaintiff "must prove that persons acting under color of state law conspired to deprive him of a federally protected right." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999). "A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Adams v. Teamsters Local 115*, 214 F. App'x 167, 172 (3d Cir. 2007) (internal quotations and citation omitted). "[A] conspiracy claim requires more than mere conjecture as to an agreement." *Grubbs v. Univ. of Del. Police Dep't.*, 174 F. Supp. 3d 839, 859 (D. Del. 2016) (citing *Great W. Mining. & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178-79 (3d Cir. 2010)). Rather, a conspiracy claim requires Plaintiff to "provide facts establishing the time of the agreement, the parties involved, the duration of the agreement and the object of the agreement." *Id.*; *see also Simonton v. Tennis*, 437 F. App'x 60, 63 (3d Cir. 2011) ("[T]he allegations of conspiracy must be grounded

---

[11] Including: "[t]hreatening Plaintiff that Defendant Favata would get Plaintiff the next time," "[a]rresting Plaintiff based on a knowingly false affidavit in support of the arrest warrant," "[d]etaining Plaintiff based on a wrongful arrest," "[t]hreatening to falsely expose Plaintiff as cooperating with the State and providing the State with information about the bloods gang," "[f]alsely advising a prisoner that Plaintiff was a snitch who provided the State with information about the bloods gang," "[i]nducing Plaintiff to testify on his own behalf at the First Trial," "[s]ponsoring the obviously false testimony of White and Williams which they knew to be false," "[f]ailing to conduct a reasonable investigation into the shooing (sic) of Mr. Munford," "[d]emeaning belittling Plaintiff McCoy at trial," "[w]rongfully prosecuting Plaintiff McCoy, knowing that he was not guilty of the shooting of Mr. Munford," "[s]uborning and committing perjury during the court hearings and trials," "[d]efaming Plaintiff McCoy," "[f]alsely reporting to prison inmate that Plaintiff McCoy was cooperating with authorities against the Bloods gang," "[h]aving Plaintiff McCoy sentenced to be injected with lethal chemicals until he was dead," and "[h]aving Plaintiff McCoy incarcerated in solitary confinement on death row." (D.I. 1 ¶ 236).

firmly in facts; they cannot be conclusory nor can they hinge on bare suspicions and foundationless speculation."). Moreover, Plaintiff's claim must allege "at least some facts which could permit a reasonable inference of a conspiracy to be drawn." *Crosby v. Piazza*, 465 F. App'x 168, 173 n.3 (3d Cir. 2012).

Here, Count II alleges that the Defendants "agreed among themselves and with other individuals . . . to deprive Plaintiff McCoy of his clearly established Fourth, Fifth and Fourteenth Amendment rights." (D.I. 1 ¶ 235). Plaintiff's allegation is wholly conclusory and fails to include any facts that would permit a reasonable inference that any two Defendants (let alone which two or more Defendants) conspired to violate Plaintiff's constitutional rights. There are no facts pleaded regarding the time, place, or conduct of the alleged conspiracy between the listed Defendants (and unnamed others). Because Plaintiff's civil conspiracy claim under Count II is based on mere conclusory allegations, it must be dismissed for failure to state a claim.

C.    **Count III: Excessive Force, Assault and Battery, Torture Excessive Force, and Cruel and Unusual Punishment, and Interference with the Right to Counsel and the Right to a Fair Trial 42 U.S.C. § 1983**

In Count III, Plaintiff alleges that DOC Defendants,[12] "with the intent to deprive Plaintiff McCoy of his constitutional rights under the Fourth, Fifth and Fourteenth Amendments[,] unlawfully detained Plaintiff McCoy, and subjected him to inhumane treatment and cruel and unusual punishment, including, physical[] abuse, emotional abuse, psychological abuse, beatings, assaults, torture, solitary confinement for excessive periods of time, and deprived him of his right to counsel and his right to a fair trial." (*Id.* ¶ 240). Plaintiff further alleges that DOC Defendants "held Mr. McCoy in solitary confinement in the Special (sic) Housing Unit at the Vaugh Correction

---

[12]    Plaintiff asserts Count III only against the DOC Defendants. (*See* D.I. 1 at 51 (Count III against Pierce, Coupe, Rispoli, Drace and Gill)).

Center, ("SHU"), knowing that such solitary confinement was causing psychological and physical damage to Plaintiff McCoy," and "intentionally subjected Plaintiff McCoy to an environment in which corrections officers and other inmates provoked and assaulted Plaintiff McCoy, physically and emotionally abused him, spat in his food, and subjected him to other torturous indignities, psychological and physical abuse." (*Id.* ¶¶ 13-14). Plaintiff also alleges he "was rarely permitted to leave his cell, was denied his rights to privacy, to visit the law library, and to legal counsel, and was generally treated cruelly and inhumanly throughout the period of his detention." (*Id.* ¶ 14).

Count III provides no plausible allegations against any of the specific DOC Defendants. As discussed *supra*, sec. III.A., § 1983 liability requires Plaintiff to show that an individual government defendant has personal involvement in the alleged wrongdoing, and the liability cannot be based on *respondeat superior*. *See Bistrian*, 696 F.3d at 366. "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho*, 423 F.3d at 353 (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). A plaintiff's complaint, however, must go beyond generalized accusations of personal involvement and instead "state[] the conduct, time, place, and persons responsible" for the wrongdoing. *Id.* (citing *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980)). Plaintiff fails to do so here.

Here, Plaintiff's claims against Defendants Coupe and Pierce fail because they are based solely on *respondeat superior*. Defendant Coupe became the Commissioner of the Department of Corrections in early 2013 and Plaintiff claims he "thus oversaw the cruel and inhumane treatment of Plaintiff." (D.I. 1 ¶ 72). Defendant Pierce was the Warden of JTVCC from the time of Plaintiff's incarceration until February 2017. (*Id.* ¶ 76). Plaintiff claims Pierce "directly oversaw the unconstitutional, cruel and inhumane treatment." (*Id.*). Apart from their roles as

Commissioner and Warden, Plaintiff fails to provide any factual support for the assertion that Coupe or Pierce had personal involvement in any of the alleged wrongdoing. Merely asserting that Coupe and Pierce "directly oversaw" wrongdoing is not a plausible factual allegation, and this conclusory statement may be disregarded under *Iqbal*. Plaintiff fails to provide facts to support that either Coupe or Pierce participated in wrongdoing, directed others to engage in wrongdoing against Plaintiff or knew others were violating Plaintiff's constitutional rights and acquiesced to that wrongdoing. Furthermore, Plaintiff makes no allegation that Coupe or Pierce "established and maintained a policy, practice or custom" that directly caused injury to Plaintiff. For these reasons, Count III must be dismissed as to Coupe and Pierce.

Defendants Rispoli, Drace, and Gill are each corrections officers at JTVCC who allegedly "oversaw and participated in the cruel and inhumane treatment of Plaintiff McCoy." (*Id.* ¶¶ 77-79). The Complaint generally alleges that "Prison Defendants" violated Plaintiff's rights in a number of ways, including beatings, abuse, spitting in his food, denying medical care, and denying access to his legal counsel (*id.* at ¶¶ 199-210), but Plaintiff provides no specific allegations as to Rispoli, Drace, or Gill. Beyond naming the three JTVCC officers as defendants and alleging that he was mistreated by "Prison Defendants" while in custody at JTVCC, Plaintiff fails to plausibly allege that Rispoli, Drace, or Gill was personally responsible for that treatment. As other courts in this District have stated, "personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right." *Thorpe v. Little*, 804 F. Supp. 2d 174, 184 (D. Del. 2011) (citing *Williams v. Lackawanna Cty. Prison*, No. 07-1137, 2010 WL 1491132, at *5 (M.D. Pa. Apr. 13, 2010)); *see also Nash v. Connections CSP, Inc.*, No. 16-896 (GMS) (D. Del. July 19, 2018) (D.I. 274 at 13) ("When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused

the deprivation acted under color of state law.").  Plaintiff has not pleaded sufficient factual content to allow the Court to draw a reasonable inference that the Defendants are individually liable for the alleged misconduct.

Moreover, *Twombly* requires Plaintiff provide "defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555.  Without setting forth which of the "Prison Defendants" is alleged to have taken the actions outlined in the Complaint, Plaintiff has failed to differentiate between Defendants and has failed to plausibly allege how each, if any, are liable for the violations alleged.  Without further factual allegations as to Defendants' personal involvement in the alleged violations, Plaintiffs complaint "stops short of the line between, possibility and plausibility" with respect to any of the DOC Defendants.  *Twombly*, 550 U.S. at 557.  Accordingly, the § 1983 allegations against the DOC Defendants fail to state a claim, and Count III is dismissed.

### D.      Count IV: Malicious Prosecution

Plaintiff asserts Count IV, a state law malicious prosecution claim, against Defendants Favata, Weaver, Denn, Smith, Babowal, and Ryde.  (*See* D.I. 1 at pg. 52).  Plaintiff alleges that "Defendants maliciously and without probable cause, initiated and continued the legal proceedings against Plaintiff McCoy without probable cause, with malice and/or intent to injure."  (*Id.* ¶ 244). Plaintiff's claim as to Weaver, Denn, Smith, Babowal, and Ryde fails as a matter of law.  Under Delaware law, a malicious prosecution claim requires that Plaintiff show:

> (1) prior institution or continuation of some regular judicial proceedings against plaintiff in this action; (2) such former proceedings must have been by, or at the instance of the defendant in this action; (3) the former proceedings must have terminated in favor of the plaintiff herein; (4) there must have been malice in instituting the former proceedings; (5) there must have been a lack of probable cause for the institution of the former proceedings; (6)

there must have been injury or damage to plaintiff from the former
proceedings.

*Wiers v. Barnes*, 925 F. Supp. 1079, 1093 (D. Del. 1996). Each of the elements are necessary for

a finding of malicious prosecution. *Id.* The "lack of probable cause is a *sine qua* non of malicious

prosecution," however, and Plaintiff "has the burden of proving that the defendant lacked probable

cause when he . . . initiated charges against the plaintiff." *Trabal v. Wells Fargo Armored Serv.

Corp.*, 269 F.3d 243, 249 (3d Cir. 2001). "[I]n a common law action for malicious prosecution, a

grand jury indictment or presentment constitutes prima facie evidence of probable cause to

prosecute." *Rose*, 871 F.2d at 353. "[T]his prima facie evidence may be rebutted by evidence that

the presentment was procured by fraud, perjury, or other corrupt means." *Id.*

The accused DSP and Prosecutor Defendants argue that Plaintiff's common law malicious

prosecution claim must fail because Plaintiff has not plausibly pleaded that there was a lack of

probable cause for the initiation of formal proceedings. (D.I. 21 at 15-17; D.I. at 15-17). As

discussed above, Plaintiff was indicted and has failed to plead facts establishing that his indictment

should not support a finding of probable cause. He has thus failed to state a claim for malicious

prosecution.

### E.     Leave to Amend

Cognizant that leave to amend "shall be freely given when justice so requires" *Foman v.

Davis*, 371 U.S. 178, 182 (1962) (citing Federal Rule of Civil Procedure 15(a)), the Court will

grant Plaintiff leave to amend his Complaint to the extent he believes he can cure the substantive

deficiencies identified herein. The Court notes, however, that aside from the substantive

deficiencies, Plaintiff's original Complaint failed to specifically identify what claims it was

asserting against which Defendant(s). Count I, for example, included claims of at least six offenses

against eight different defendants without making clear how the claims were related or which

claims were asserted against whom. Such vague, group-pled, puzzle pleading is inappropriate and does not provide Defendants the required fair notice of the claims and the grounds upon which they rest. To the extent, Plaintiff repeats this inappropriate pleading style in any proposed amended complaint, the Court will dismiss those claims with prejudice.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the three motions to dismiss (D.I. 17, 20, 23) are GRANTED. An appropriate order will follow.