IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ISAIAH W. MCCOY,                        )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )   C.A. No. 17-1046 (MN)
                                       )
R. DAVID FAVATA, *et al.*,              )
                                       )
            Defendants.                )

**<u>MEMORANDUM OPINION</u>**

Herbert W. Mondros, Krista M. Reale, MARGOLIS EDELSTEIN, Wilmington, DE – attorneys for Plaintiff

Aaron R. Goldstein, Joseph C. Handlon, Stephen M. Ferguson, Deputy Attorneys General, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE – attorneys for Defendants Matthew Denn, Gregory Babowal, Stephen Smith, and Deborah Weaver

George T. Lees, III, Deputy Attorney General, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE – attorney for Defendants Robert M. Coupe, Nathaniel McQueen, Jr., and Mark Ryde

Ryan P. Connell, Deputy Attorney General, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE – attorney for Robert M. Coupe, David Pierce, Marcello Rispoli, Todd Drace, and George Gill

Scott G. Wilcox, MOORE AND RUTT, P.A., Wilmington, DE – Attorneys for Defendant Anthony DiGirolomo

April 21, 2020
Wilmington, Delaware

*Maryellen Noreika*

**NOREIKA, U.S. DISTRICT JUDGE**:

Before the Court are four motions to dismiss for failure to state a claim filed by: (1) Defendants Robert Coupe (in his capacity as Commissioner of the Delaware Department of Corrections), David Pierce, Marcello Rispoli, Todd Drace, and George Gill ("the DOC Defendants") (D.I. 70); (2) Defendants Nathaniel McQueen, Jr., Mark Ryde, and Robert Coupe (in his capacity as Superintendent of the Delaware State Police) ("the DSP Defendants") (D.I. 72); (3) Defendants Gregory Babowal, Matthew Denn, Stephen Smith, and Deborah Weaver ("the Prosecutor Defendants") (D.I. 74); and (4) Defendant Anthony DiGirolomo (D.I. 81). Together, the motions seek dismissal of all remaining claims in this suit.[1] Plaintiff opposes the motions. (D.I. 78-80, 90).

For the reasons set forth below, the Court will GRANT the motions to dismiss filed by the DSP Defendants (D.I. 72), the Prosecutor Defendants (D.I. 74), and Defendant DiGirolomo (D.I. 81). It will also GRANT the motion to dismiss filed by the DOC Defendants (D.I. 70) as to Defendants Coupe and Pierce, but will DENY that motion as to Defendants Rispoli, Drace, and Gill.

## I. BACKGROUND

This litigation stems from the investigation, prosecution, conviction, and incarceration of Plaintiff Isaiah McCoy ("Plaintiff" or "McCoy") for the May 4, 2010 murder of James Munford. (D.I. 66 ¶¶ 1-17). On July 6, 2010, Plaintiff was indicted for the murder of Munford. *See State v. McCoy*, No. 1005008059A, 2012 WL 5552033, at *1 (Del. Super. Ct. Oct. 11, 2012). His first trial was prosecuted by former Defendant R. David Favata and Weaver. (D.I. 66 ¶¶ 38, 48).

---

[1]     As discussed *infra*, the motions do not address claims asserted against former Defendant Favata, who has been dismissed from the case. (D.I. 98).

During that trial, Plaintiff represented himself *pro se* with the aid of stand-by counsel. (*See, e.g., id.* ¶¶ 199, 208). On June 29, 2012, the jury returned a guilty verdict against Plaintiff for the murder. (*Id.* ¶ 193). On October 11, 2012, the court sentenced Plaintiff to death. (*Id.* ¶ 196).

Thereafter, Plaintiff filed for post-conviction relief and, on January 20, 2015, the Delaware Supreme Court reversed his conviction and remanded the case for a new trial. (*Id.* ¶ 214). Explaining the reversal, the Delaware Supreme Court noted that the trial court had committed a "reverse-*Batson*" error and Favata had engaged in a number of improper actions during the prosecution. *See generally McCoy v. State*, 112 A.3d 239 (Del. 2015). The Delaware Supreme Court also found that, "[a]lthough there was no physical evidence linking McCoy to the crime, the record does not support McCoy's argument that the evidence was insufficient to convict him." *Id.* at 268.

Plaintiff's second trial began on January 9, 2017. (D.I. 66 ¶ 253). The second trial was prosecuted by Defendants Babowal and Smith. (*Id.* ¶¶ 53-59). McCoy was represented by counsel. (*Id.* ¶ 248). On January 19, 2017, he was found not guilty of the murder and released from prison. (*Id.* ¶¶ 255, 258).

On July 28, 2017, Plaintiff filed this lawsuit. (D.I. 1 ("Original Complaint")). The Original Complaint included seven counts raising theories of liability under federal and state law against twelve defendants. (*Id.*). On March 29, 2019, this Court granted motions to dismiss filed by the DSP Defendants, the DOC Defendants, and the Prosecutor Defendants, dismissing all claims against those parties without prejudice. (D.I. 64 ("First Opinion"); D.I. 65). On April 22, 2019, Plaintiff filed an amended complaint. (D.I. 66 ("Amended Complaint")). The Amended Complaint includes fourteen counts and adds a defendant, Anthony DiGirolomo. (*Id.*).

The core facts alleged in the Amended Complaint, however, remain similar to those alleged in the Original Complaint.  Thus, rather than summarize them here, the Court will discuss them (and Plaintiff's modifications to the Original Complaint) as necessary in its analysis below.

## II.    LEGAL STANDARDS

When a complaint is challenged by a Rule 12(b)(6) motion to dismiss, the Court conducts a two-part analysis.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions."  *Id.* at 210-11.  Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556, U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (internal citations omitted).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  Instead, "[t]he complaint must state enough facts to raise a reasonable expectation

that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim.  *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal citations omitted).

## III.   DISCUSSION

Counts I through VII, IX[2], X, and XIV of the Amended Complaint include claims against the movant Defendants.  Counts VIII, XI, XII, and XIII are alleged only against former Defendant Favata, who has been dismissed from this case without prejudice pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure.  (*See* D.I. 98).[3]

### A.   Counts I and III: Malicious Prosecution and Substantive Due Process Claims Against Defendant Ryde

Counts I and III are asserted against Defendant Ryde, a homicide detective with the Delaware State Police ("DSP") and the lead detective assigned to investigate the murder of James Munford.  (D.I. 66 ¶¶ 60-62).  Much like those in the Original Complaint, the Amended Complaint's claims against Ryde relate to Plaintiff's allegation that Ryde's investigation was "constitutionally defective."  (*Id.* ¶ 63).

Plaintiff alleges that Ryde "conspired with Favata and DiGirolomo" to investigate, prosecute, and execute Plaintiff for Munford's murder, despite knowing that Plaintiff was not involved in that incident.  Ryde also allegedly "arrested Dashaun White and Reykeisha Williams for the murder of Mr. Munford, suggested to both that Plaintiff was the shooter, and "coerced" both to provide statements and testimony implicating Plaintiff.  (*Id.* ¶¶ 64-65, 73).  Plaintiff further

---

[2]     The ninth count in the Amended Complaint – alleging malicious prosecution against Defendant Weaver – is mislabeled as "Count XI" instead of "Count IX."  The Amended Complaint also includes an eleventh count labeled "Count XI."  The Court thus refers to the malicious prosecution count against Weaver as "Count IX" for purposes of this opinion.

[3]     Those latter counts – VIII, XI, XII, and XIII – as well as allegations specific to Favata in Counts I-VII, IX, X, and XIV were dismissed with the dismissal of Favata.

alleges that Ryde, "[i]n conjunction with Defendants Favata and Weaver . . . offered sweet plea deals to White and Williams" to testify against Plaintiff, "made knowingly false statements and failed to disclose material information" in the affidavit he submitted to obtain an arrest warrant for Plaintiff ("the Ryde Affidavit"), and "provided false statements to the grand jury leading to the indictment of Plaintiff." (*Id.* ¶¶ 66-67, 75-76).

According to the Amended Complaint, Ryde also "failed to conduct an investigation to discover evidence that would have corroborated or refuted the patently incredible and ever-changing versions of the stories told by White and Williams" and "employed discredited interrogation techniques including lying to White and Williams in order to induce them to provide false testimony against Plaintiff." (*Id.* ¶¶ 74, 155). Plaintiff alleges that Ryde materially misstated various facts in the Ryde Affidavit by: making certain statements about the content of the surveillance video of Munford's murder that could not be "reasonably concluded" from that video; inappropriately referring to Williams as a "victim"; omitting that Williams did not mention Plaintiff when she was first interviewed by police about the murder; and "fail[ing] to note that of the eight witnesses interviewed only two, both of whom were implicated in the shooting and received leniency for implicating [Plaintiff], identified [Plaintiff] as being present at the shooting." (*Id.* ¶¶ 68-72, 158). Plaintiff further alleges that Ryde did not consult detectives trained in gunshot residue analysis and failed to re-interview certain witnesses, and no detective was asked or made any attempt to reconstruct the Munford shooting. (*Id.* ¶¶ 161, 166, 177).

Counts I and III assert claims for malicious prosecution and substantive due process violations, respectively. Like those in the Original Complaint, however, the Amended Complaint's due process claims against Ryde focus on the alleged improper investigation. (*Id.* ¶¶ 320 ("Ryde's failure to conduct an adequate investigation and creation of a case, including the

fabrication of probable cause, against Plaintiff McCoy with no reasonable belief that Plaintiff

McCoy was responsible for the murder of Mr. Munford, violated Plaintiff McCoy's Constitutional

Right to Due Process and resulted in his incarceration.").[4]  Thus, the Court reviews Plaintiff's

allegations regarding investigatory impropriety and substantive due process violations together.

### 1.     Count I: Malicious Prosecution Against Defendant Ryde

Plaintiff has failed to plead a § 1983[5] malicious prosecution claim against Ryde.  To plead

malicious prosecution, Plaintiff must allege:

> (1) the defendant[] initiated a criminal proceeding; (2) the criminal proceeding
> ended in [Plaintiff's] favor; (3) the proceeding was initiated without probable cause;
> (4) the defendant[] acted maliciously or for a purpose other than bringing [Plaintiff]
> to justice; and (5) [Plaintiff] suffered a deprivation of liberty consistent with the
> concept of seizure as a consequence of a legal proceeding.

*DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citing *Estate of Smith v.*

*Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).  As to the third element, however, "a grand jury

indictment or presentment constitutes prima facie evidence of probable cause to prosecute . . . ."

*Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989); *accord Blenman v. Dover Police Dep't*, 214 F.

Supp. 3d 261, 267 (D. Del. Oct. 12, 2016) (citing *King v. Deputy Att'y Gen. Del.*, 616 F. App'x

---

[4]     *Accord* D.I. 78 at 13-17 (Plaintiff's Answering Brief to DSP Defendant's Motion to
Dismiss) ("Mr. McCoy's substantive due process claims are based upon the DSP
Defendants' complete failure to conduct any meaningful investigation into the murder of
Mr. Munford."); *see also McCoy v. Favata*, 2019 WL 1429570, at *8.

[5]     Although Plaintiff's malicious prosecution counts do not specifically invoke § 1983, each
invokes Plaintiff's rights, "under the Fourth and Fourteenth Amendments . . . to be free of
prosecution absent probable cause," (D.I. 66 ¶¶ 288, 296, 354, 365, 370), and Plaintiff
argues them as § 1983 claims throughout his briefing.  Moreover, even if alleged under
state law, a failure to allege sufficiently that a criminal proceeding against Plaintiff was
initiated without probable cause is fatal to Plaintiff's claim.  Delaware common law
requires "a lack of probable cause for the institution of the [contested judicial]
proceedings," and "in a common law action for malicious prosecution, a grand jury
indictment or presentment [also] constitutes prima facie evidence of probable cause to
convict." *See McCoy v. Favata*, 2019 WL 1429570, at *13 (citations omitted).

491, 495 (3d Cir. 2015); *Trabal v. Wells Fargo Armored Servs. Corp.*, 269 F.3d 243, 251 (3d Cir. 2001)). A party may rebut such evidence by showing "that the presentment was procured by fraud, perjury, or other corrupt means." *Rose*, 871 F.2d at 353; *Blenman*, 214 F. Supp. 3d at 267 (quoting *Woodyard v. County of Essex*, 514 F. App'x 117, 183 (3d Cir. 2015) (quoting *Rose*, 871 F.2d at 353)).

Here, Plaintiff was indicted for the murder of James Munford on July 6, 2010. *See McCoy*, 2012 WL 5552033, at *1. In light of this, the Court, in its First Opinion, held that Plaintiff's "failure to allege . . . that [the] indictment was procured by fraud, perjury, or other corrupt means necessarily means that he has failed to plead the requisite third element of a malicious prosecution claim – *i.e.*, that his criminal proceeding was initiated without probable cause." *McCoy v. Favata*, No. 17-CV-1046 (MN), 2019 WL 1429570, at *9 (D. Del. Mar. 29, 2019). Although Plaintiff has added allegations that "Defendant Ryde . . . provided false statements and omitted necessary information before the Grand Jury which lead [sic] to Plaintiff's indictment," (D.I. 66 ¶ 289), the Supreme Court has instructed that grand jury witnesses, including members of law enforcement, have "absolute immunity from *any* § 1983 claim based on the witness's testimony." *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012). Such immunity "prohibits [Plaintiff] from rebutting [the presumption created by his indictment] with evidence that [Ryde] made misrepresentations to the grand jury." *Jones v. Dalton*, 867 F. Supp. 2d 575, 584 (D.N.J. Apr. 3, 2012).

Moreover, even if it were possible for such allegations to rebut the presumption created by the indictment, the allegations here fail to satisfy the pleading standards. The Amended Complaint contains no factual support for the assertion that Ryde "provided false statements and omitted necessary information before the Grand Jury," it simply repeats the same conclusory allegation in various forms, (*e.g.*, *id.* ¶¶ 75-76). The Court is not obligated to accept such "bald assertions" and

"unsupported conclusions." *Morse*, 132 F.3d at 906; *see also Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

Nevertheless, Plaintiff argues that his allegations of misstatements, errors, and omissions in the Ryde Affidavit – submitted to secure an arrest warrant for Plaintiff for the Munford murder – satisfy his burden to establish that the criminal proceeding against him was initiated without probable cause. (D.I. 78 at 9-10). Even assuming that errors and omissions in an arrest warrant affidavit that followed an indictment could meet this requirement,[6] Plaintiff's allegations do not do so here.

A plaintiff can overcome a facially valid warrant only by demonstrating, in compliance with *Iqbal*, *see Sampson v. Pierro*, No. 14-CV-5983 (ES), 2017 WL 1032517, at *3 (D.N.J. Mar. 16, 2017): "(1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Shaffer v. City of Pittsburgh*, 650 F. App'x 111, 113-14 (3d Cir. 2016) (quoting *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997))).

To determine the materiality of misstatements and omissions, the Court must reconstruct the affidavit, "excise the offending inaccuracies and insert the facts recklessly omitted, and then

---

[6]     At least one other court in this district has held that complaints regarding a warrant are irrelevant to a malicious prosecution claim where the plaintiff was also indicted. *Blenman*, 214 F. Supp. 3d at 266-67 ("Plaintiff's assertions that there was lack of probable cause for issuance of the search warrant have no bearing on the malicious prosecution claim. The issue is whether there was probable cause at the time the charges were filed. A Plaintiff's claim for malicious prosecution begins not with an arrest, which is not pursuant to legal process, but with the indictment." (citing *Sershen v. Cholish*, 2007 WL 3146357, at *10 (M.D. Pa. 2007) (citing *Gallo v. City of Phila.*, 161 F.3d 217, 222 (3d Cir. 1998)))).

determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Wilson*, 212 F.2d at 789; *accord Shaffer*, 650 F. App'x at 114 (citing *Wilson*, 212 F.2d at 789; *Reedy v. Evanson*, 615 F.3d 197, 215-16 (3d Cir. 2010)). Thus, to satisfy this requirement, Plaintiff must sufficiently allege (with factual support) that if the facts he complains were improperly omitted from the application for the arrest warrant had been included, and the language he complains was falsely stated had been stated "correctly," the affidavit would not have established probable cause. *Lincoln v. Hanshaw*, 375 F. App'x 185, 189 (3d Cir. 2010).

Plaintiff's claim fails because, even assuming Ryde had the requisite state of mind to satisfy the first element and Plaintiff's allegations of impropriety meet the pleading standards, probable cause to arrest would still have existed if the affidavit were "corrected" in the manner Plaintiff requests. *Shaffer*, 650 F. App'x at 114-115.[7]

Plaintiff alleges the Ryde Affidavit misstates and omits several pieces of information:

- It "misstates the content of the video related to the shooting" by
  - Saying the "surveillance footage shows two black males approaching the victim's [vehicle]," because "it cannot be reasonably concluded from the video that the two men 'approached' the victim's vehicle," (D.I. 66 ¶ 68), and
  - Saying "[a]fter the victim is shot and runs from the vehicle towards the bowling alley, the two suspects drive the victim's vehicle out of the parking lot," because nothing on the video "would reasonably lead one to conclude that the victim was shot in the vehicle and then ran" or that "the 'two' suspects drove off in the victim's vehicle," and "[a]t best, the video reflects that only one man can be considered to have been involved in the incident," (D.I. 66 ¶ 69);
- It "misrepresent[s]" Williams' statements by describing her as a "victim" because "she pled guilty to offenses related to the incident," (*id.* ¶ 70);
- It omits information by
  - Saying that Williams identified Plaintiff as the shooter on May 11, 2010, but not including that Williams "did not even mention Mr. McCoy, much

---

[7]     Neither side argues the validity of the arrest warrant.

less indicate that he was the shooter" in her first, *Mirandized*, statement to Defendant Ryde on May 7, 2010, (*id.* ¶ 71);

- o "[F]ail[ing] to note that of the eight witnesses interviewed, only two, both of whom were implicated in the shooting and received leniency for implicating Mr. McCoy, identified Mr. McCoy as being present at the shooting," (*id.* ¶ 72).

Reconstructing the Ryde Affidavit to account for these critiques results, in pertinent part, in the following:

- On May 4, 2010, the DSP, Dover Police, and EMS responded to the parking lot of the Brunswick Bowling alley for a subject who had been shot. The victim was James Munford.

- The Munford shooting was captured on a surveillance camera. The footage shows two black males and Munford's 1999 Chevrolet Suburban as it was parked in the side parking lot of the bowling alley. Someone exits the car and runs from the vehicle towards the bowling alley. Someone drives Munford's vehicle out of the parking lot westbound towards the neighborhood of Rodney Village.

- Munford's vehicle was located at approximately 2020 hours by the DSP parked in the driveway of an abandoned residence at 302 Samuel Paynter Drive, Rodney Village, Dover, Delaware, approximately two blocks from the crime scene. Located inside the vehicle was a State of Delaware Identification Card belonging to Williams.

- Williams was initially interviewed regarding the incident on May 7, 2010. She was *Mirandized* and did not mention Plaintiff or any involvement by Plaintiff in the incident.

- Williams was interviewed again on May 11, 2010, and stated that:

  - o She and her boyfriend, Munford, drove to the bowling alley on the day of the murder to meet with Plaintiff.

  - o She knew Plaintiff from the Work Release Program in Georgetown, Delaware and had recently run into him at the Dover Downs Casino in Dover, Delaware, where they exchanged telephone numbers.

  - o The day before the murder, Munford returned from a trip to North Carolina with a substantial amount of Ecstasy pills to sell. Williams called Plaintiff, who then spoke to Munford. On the call, Munford and Plaintiff agreed to trade 200 Ecstasy pills for $750.00 and two grams of crack cocaine.

  - o After Williams and Munford parked at the bowling alley, Plaintiff and a second unknown black male approached their vehicle and Plaintiff got into the passenger side rear seat. While inside, Plaintiff pointed a dark colored handgun at Munford. Munford asked if Williams could leave and Plaintiff said "yes." Williams exited the vehicle and began to run towards the rear of the bowling alley when she heard two gunshots. When she got to the

intersection of Joshua Clayton Road and Gunning Bedford Road Plaintiff caught up to her on foot and forced her to accompany him back to his residence.

o Plaintiff kept Williams in the basement of his residence from May 4, 2010 until approximately May 6, 2010 at 0700 hours. Plaintiff had taken her cell phone, threatened her life if she told the police anything, and advised her that he was a member of the "Bloods" gang. A middle-aged black female drove Williams in a silver colored minivan from Plaintiff's residence back to her residence in Seaford, Delaware, and dropped her off on May 06, 2010 at approximately 0700 hours.

o While Williams was captive at Plaintiff's residence, Plaintiff was making and receiving numerous calls on his cell phone. Plaintiff was bragging to people over the cell phone that he was responsible for the Rodney Village Shooting. Plaintiff advised the witness that he shot her boyfriend because it looked like he was going for something.

- Williams positively identified Plaintiff from a photo lineup as the suspect with the handgun and positively identified Plaintiff's mother from her driver's license photograph as the woman who drove Williams home from Plaintiff's residence.

- A criminal history check of Plaintiff shows that he resides at 341 David Hall Road, Rodney Village, Dover, Delaware. Plaintiff's mother also resides at that location and is approximately sixty-three years old. A check of the Delaware Department of Motor Vehicle database revealed that Plaintiff's mother has a 2000 Dodge Caravan registered in her name at the same address.

- On May 11, 2010, Defendant Ryde drove Williams in an unmarked car through the Rodney Village development at which time she positively identified 341 David Hall Road as the residence where Plaintiff had taken her and held her captive. Plaintiff's mother's Dodge Caravan was in the driveway of the same address at the time of the drive by and Williams positively identified the van.

- A check of Plaintiff's criminal history revealed that he was convicted of Aggravated Menacing in the Superior Court of the County of Kent, State of Delaware, on May 8, 2007. This makes Plaintiff a person prohibited from possessing firearms and or ammunition.

- Of eight witnesses interviewed, two identified Plaintiff as the shooter. Those two witnesses were also initially implicated in the shooting and received leniency for implicating Plaintiff.

- The video reflects that one man was involved in the shooting.

(*See* D.I. 73, Appendix at DSP004-006).

"Probable cause exists where, in the 'totality of the circumstances,' there is 'a fair probability that the person committed the crime.'" *Langford v. Gloucester Twp. Police Dep't*, 787

F. App'x 120, 122 (3d Cir. 2019) (quoting *District of Columbia v. Wesby*, 138 S.Ct. 577, 586 (2018)); *see also Turkos v. Dupont Borough*, 721 F. App'x 208, 212 (3d Cir. 2018). "Put differently, probable cause is present 'when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" *Turkos*, 721 F. App'x at 212 (citing *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). This standard provides individuals with the protection against "unreasonable searches and seizures" required by the Fourth Amendment, while simultaneously enabling investigating officers to act quickly "before necessarily obtaining evidence sufficient to prove guilt beyond a reasonable doubt." *Smith v. Angelo*, C.A. No. 14–1066–GMS, 2017 WL 2276985, at *5 (D. Del. May 25, 2017) (citations omitted). It does not, however, "require that officers correctly resolve conflicting evidence or that their determinations of credibility were, in retrospect, accurate." *Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005). Thus, a police officer may be liable for civil damages for an arrest only "if 'no reasonable competent officer' would conclude that probable cause exists." *Wilson*, 212 F.3d at 790-91 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Courts "assess probable cause by 'weighing the inculpatory evidence against any exculpatory evidence available to the officer.'" *Tisdale v. City of Phila.*, 688 F. App'x 136, 138 (3d Cir. 2017) (quoting *Wilson*, 212 F.3d at 791). Although "not absolute, a positive identification by a witness is considered strong inculpatory evidence; exculpatory facts must be weighed against inculpatory facts, construed from the vantage point of the arresting officer, and do not necessarily undermine the existence of probable cause." *Id.* (citing *Wilson*, 212 F.3d at 791).

The two strongest pieces of inculpatory evidence in the "corrected" affidavit are Williams' positive identification of Plaintiff and her March 11 description of events. *See Wilson*, 212 F.3d

at 791.  Moreover, that description is corroborated by: (1) Williams' positive identification of Plaintiff's home as the place she was held following the shooting; (2) Williams' positive identification of Plaintiff's mother as the person who eventually brought her home; (3) Williams' positive identification of Plaintiff's mother's Dodge Caravan as the vehicle that Plaintiff's mother used to bring Williams home; (4) the surveillance video (even as "corrected"); and (5) the nature of Munford's injury.

On the other hand are the facts that Williams did not mention Plaintiff in her first statement to police; only two of the eight witnesses interviewed, both of whom were implicated in the shooting and received leniency for implicating Plaintiff, identified Plaintiff as being present at the shooting; and the revised description of the surveillance footage.  Any doubt created by Williams' inconsistent statements, however, is countered by Plaintiff's alleged threat on Williams life if she spoke to police, the fact that her initial statement was taken only one day after Plaintiff allegedly released her from confinement, and the corroborating evidence described above.  Moreover, that two of eight witnesses identified Plaintiff as being present for the shooting adds weight to both sides – the fact that six other persons did not mention Plaintiff's alleged presence undermines Williams' story, but the fact that another person did report seeing Plaintiff at the murder scene supports her.  Additionally, without any clarification as to when the two witnesses were allegedly offered leniency (*i.e.* before or after the arrest warrant was sought), such a fact does not necessarily undercut Williams' credibility, especially given her alleged vantage point during the incident.  Finally, Plaintiffs' interpretation of the surveillance video is not necessarily exculpatory or, in fact, inconsistent with Williams' description of events.[8]

---

[8]     Whether Williams was a victim or an implicated witness is also not particularly or necessarily relevant, incorrect, or exculpatory.

In total, the allegedly exculpatory facts, when weighed against the inculpatory facts, do not undermine the existence of probable cause. Looking at the totality of the circumstances as alleged in the "corrected" affidavit, there was a fair probability that Plaintiff committed the crimes stated in the arrest warrant based on the surveillance footage, Williams' eyewitness testimony, and the various corroborating evidence discussed above.

This conclusion is affirmed by a ruling at the state trial court in advance of Plaintiff's second trial for Munford's murder. Before that trial, Plaintiff moved to suppress certain evidence under *Franks v. Delaware*, 438 U.S. 154 (1978). In *Franks*, "the [Supreme] Court created a mechanism to allow a defendant to overcome the general presumption that an affidavit of probable cause supporting a search warrant is valid." *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006). The analysis under *Franks* is almost identical to that required here. *See Yusuf*, 461 F.3d at 383 (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)). Much as his Amended Complaint and briefs do here, Plaintiff's *Franks* motion challenged whether probable cause existed for his arrest. In support, he alleged many of the same misstatements and omissions in the Ryde Affidavit as discussed *supra*. Indeed, Plaintiff's arguments to the state court in support of his *Franks* motion are very similar – and in some cases identical – to those he makes here. (*See* D.I. 73, Appendix at DSPA000147-152). Yet the state court denied his motion because it could not "find that the Affiant Officer [– *i.e.* Ryde –] made 'a false statement knowingly and intentionally, or with reckless disregard for the truth' in any statement that was 'necessary to the finding of probable cause.'" (*Id.* at DSPA000247). As it noted, "[t]he issue [in a probable cause inquiry] is not whether a fact finder would come to one particular position after reviewing all of the available evidence. The issue is whether or not sufficient facts exist to show probable cause that a crime

occurred and that the subject of the affidavit committed it." (*Id.* at DSPA000248). As the state court concluded, albeit following a slightly different analytical process:

> "By evaluating both statements of the witness, [Ryde] found the set he put forth in the affidavit more credible. In stating that evidence, he established probable cause. The evidence contrary to the statements [he] cited is, of course, useful for cross-examination. Its absence does not negate the statement, based on credible – whether or not ultimately accurate – information.

(*Id.*).[9,10]

This Court agrees. Sufficient facts existed to show probable cause that a crime occurred and that McCoy, the subject of the affidavit, committed it. Plaintiff has failed to allege sufficiently that his indictment or arrest warrant was compromised by fraud, perjury, or other corrupt means, or that the omissions and falsifications alleged in his arrest warrant are "material" to the finding of probable cause. As such, he has failed to state a claim against Ryde for malicious prosecution in Count I.

### 2.      Count III: Substantive Due Process Against Defendant Ryde

Plaintiff also fails to adequately plead a § 1983 substantive[11] due process claim against Ryde. As noted, Plaintiff's due process claim is predicated upon his allegation that Ryde conducted a "constitutional deficient" investigation. "[A]n allegation of a failure to investigate,

---

[9]     The state court also found that the description of the content of the surveillance video "are not misstatements, and are certainly not deliberate falsehoods or reckless disregards of truth." (D.I. 73, Appendix at DSPA000248-49).

[10]    As noted *supra*, the Delaware Supreme Court, presumably with the benefit of these various pieces of purportedly exculpatory evidence, also concluded that "the record does not support McCoy's argument that the evidence was insufficient to convict him." *See McCoy v. State*, 112 A.3d at 268.

[11]    Although the Amended Complaint does not clarify whether Plaintiff is alleging a substantive or procedural due process violation, Plaintiff states that Counts III and IV are substantive due process claims in his answering brief. (D.I. 78 at 13).

without another recognizable constitutional right, [however,] is not sufficient to sustain a section 1983 claim." *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989)); *accord McCoy v. Favata*, 2019 WL 1429570, at *10. The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Here, Plaintiff claims that Ryde's alleged failure to conduct a "legitimate investigation" into the murder of James Munford and alleged "fabricat[ion] of probable cause" in the Ryde Affidavit and before the grand jury cost Plaintiff "his liberty and almost his life," thereby implicating the due process clause of the Fourteenth Amendment. (*See* D.I. 66 ¶¶ 307-20; D.I. 78 at 14).

The Fourteenth Amendment's due process clause "requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Baker v. McCollan*, 443 U.S. 137, 142-43 (1979). The requirement is satisfied upon the issuance of an arrest warrant predicated upon probable cause, and where due process is satisfied, a claim arising from an allegedly inadequate investigation cannot be maintained. *See Lincoln*, 375 F. App'x at 190 ("The Fourteenth Amendment imposed no obligation on officers to uncover further evidence once probable cause [was] established at the time of [the suspects'] arrests." (citing *Baker*, 443 U.S. at 145-46)).

First, as already discussed *supra*, to the extent Plaintiff's § 1983 substantive due process claims against Ryde rest on the allegation that he lied to the grand jury, Ryde is absolutely immune, *Rehberg*, 556 U.S. at 369, and, moreover, Plaintiff's allegations to that effect amount to no more than "bald assertions." *Morse*, 132 F.3d at 906; *see also Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Second, the Ryde Affidavit – even when "corrected" – establishes probable cause to arrest Plaintiff. *See supra*. Due process is therefore satisfied, and Plaintiff's § 1983 substantive due

process claim against Ryde for a constitutionally deficient investigation must fail. *See Lincoln*, 375 F. App'x at 190. Accordingly, Plaintiff has failed to state a claim against Ryde for § 1983 substantive due process violations in Count III.

### B.    Counts II and IV: Malicious Prosecution and Substantive Due Process Against Defendants Coupe and McQueen

Counts II and IV are directed to Defendants Robert Coupe and Nathaniel McQueen, Jr. Coupe was the Superintendent of the DSP during the investigation of Plaintiff for the Munford murder. (D.I. 66 ¶ 81).   McQueen has been the Superintendent of the DSP since December 20, 2012. (*Id.* ¶ 91). Counts II and IV assert § 1983 claims for malicious prosecution and substantive due process violations, respectively, against the pair for their actions while DSP Superintendent.[12]

The crux of both Count II and IV, however, is Coupe and McQueen's alleged impact on and oversight of the actions of Defendant Ryde.[13] As already explained, however, to proceed on a claim for malicious prosecution, Plaintiff must sufficiently allege that a "criminal proceeding"

---

[12]    As alluded to *supra*, Coupe is also sued in his capacity as Commissioner of the Delaware Department of Corrections, a role he assumed in March 2013. (D.I. 66 ¶ 90). His alleged actions in that role, however, are not relevant to Counts II or IV.

[13]    *See, e.g.*, D.I. 66 ¶¶ 295-96 (alleging, for Count II, that "Defendants Coupe and McQueen . . . established and maintained policies and procedure [sic], that resulted in the hiring, retention, and promotion of Defendant Ryde, and failed to provide for the supervision of Defendant Ryde, directly resulting in the misconduct of Defendant Ryde as alleged herein" and the violation of "Plaintiff McCoy's clearly established rights, under the Fourth and Fourteenth Amendments of the United States Constitution to be free of prosecution absent probable cause"); *id.* ¶¶ 336-340 (alleging, for Count IV, that "Defendants Coupe and McQueen's ratification and encouragement of Defendant Ryde's failure to conduct an adequate investigation and creation of a case, including the fabrication of probable cause, against Plaintiff McCoy . . . violated Plaintiff McCoy's Constitutional Right to Due Process," and Coupe and McQueen "did nothing to correct the violations of Plaintiff McCoy's Due Process" rights perpetrated by Ryde); *see also id.* ¶ 150 ("McQueen and Coupe were grossly negligent in hiring, training, supervising, and retaining Defendant Ryde.").

against him "was initiated without probable cause." *DiBella*, 407 F.3d at 601. Plaintiff's malicious prosecution claims against Coupe and McQueen are based on the same criminal proceeding(s) as his malicious prosecution claim against Ryde. Thus, for the same reason Plaintiff has insufficiently alleged malicious prosecution against Ryde in Count I, he has insufficiently alleged malicious prosecution against Coupe and McQueen in Count II.

Additionally, the Third Circuit has held that "claims of negligent hiring, inadequate supervision, screening, and training" brought pursuant § 1983 "must show that there was a constitutional violation." *L.H. v. Pittston Area Sch. Dist.*, 666 F. App'x 213, 217-18 (3d Cir. 2016) ("Appellants cannot recover under any of these theories for the simple reason that they have failed to establish an underlying constitutional violation." (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)); *accord McCoy v. Favata*, 2019 WL 1429570, at *6. As Plaintiff has not sufficiently pleaded an underlying constitutional violation by Ryde, Plaintiff has also failed to plead a claim against Coupe or McQueen for inadequately supervising or training Ryde, and thereby encouraging, ratifying, or otherwise causing such a violation. Thus, Plaintiff has failed to state a claim against Coupe or McQueen in both Count II and Count IV.

## C.  <u>Count V: Section 1983 Civil Conspiracy Against DSP Defendants</u>

Count V asserts a § 1983 civil conspiracy claim against the three DSP Defendants – Ryde, Coupe, and McQueen. (D.I. 66 at 74). "[I]n the absence of an actual violation of a constitutional right under § 1983, [however] Plaintiff's conspiracy claim necessarily fails." *Abreu v. Ferguson*, No. 1:19-cv-20, 2020 WL 1271637, at *7 (M.D. Pa. Mar. 17, 2020) (citing *Perano v. Twp. of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011) ("As a threshold matter, . . . a § 1983 conspiracy claim only arises when there has been an actual deprivation of a right."); *Gibbs v. Harsky*, No. 98-787 JJF, 2004 WL 1328278, at *3 (D. Del. Mar. 31, 2004) ("Without an underlying constitutional

injury, a plaintiff cannot succeed on a civil conspiracy claim pursuant to § 1983."), *aff'd*, 122 F.

App'x 597 (3d Cir. 2005)); *accord Kovarik v. South Annville Twp.*, No. 1:17-cv-00097, 2018 WL

1428293, at *10 (M.D. Pa. Mar. 22, 2018) (applying same rule to dismiss § 1983 civil conspiracy

claim).  As addressed *supra*, Plaintiff's underlying claims against the DSP Defendants are subject

to dismissal.  Thus, Count V is also insufficient.[14]

### D.    Count VI: Excessive Force, Assault and Battery, Torture Excessive Force, and Cruel and Unusual Punishment, and Interference with the Right to Counsel and the Right to a Fair Trial Against DOC Defendants

Count VI is directed to the DOC Defendants – Defendants Coupe, Pierce, Rispoli, Drace,

and Gill.  (D.I. 66 at 77).  It asserts various claims related to Plaintiff's treatment during his period

of incarceration following his murder conviction.  (*Id.* ¶ 351).  Coupe was "the Commissioner of

the Department of Corrections beginning in March 2013," (*id.* ¶ 90), Pierce was, "at all relevant

times, the Warden of the James T. Vaughn Correctional Center ('JTVCC') where Plaintiff McCoy

---

[14]    Additionally, the Amended Complaint's conspiracy allegations against the DSP Defendants suffer from the same defect as those in the Original Complaint – they are wholly conclusory, containing no facts regarding the time, place, or conduct of the alleged conspiracy.  *Grubbs v. Univ. of Del. Police Dep't*, 174 F. Supp. 3d 839, 859 (D. Del. 2016) (holding that plaintiff must "provide facts establishing the time of the agreement, the parties involved, the duration of the agreement and the object of the agreement"); *accord Adams v. Teamsters Local 115*, 214 F. App'x 167, 172 (3d Cir. 2007) ("[T]he principal element of [a civil conspiracy] is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage."); *Grubbs*, 174 F. Supp. 3d at 859 ("[A] conspiracy claim requires more than mere conjecture as to an agreement." (citing *Great W. Mining. & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178-79 (3d Cir. 2010))).  Plaintiff makes no factual allegation that Coupe and McQueen had any interaction whatsoever, nevermind one that led to an agreement of any sort, and provides no details or description of the policies or procedures that Coupe and McQueen allegedly implemented to "encourage" misconduct by Ryde.  Instead, Plaintiff attempts to rely on the lack of action by those two – *i.e.* not correcting the alleged misrepresentations in the Ryde Affidavit and not disciplining Ryde for the alleged misconduct – to evidence their agreement to and participation in this conspiracy.  (D.I. 66 ¶¶ 83-89, 93-100).  This reliance on "bare suspicions and foundationless speculation" is not enough to permit a reasonable inference that the DSP Defendants conspired to deprive Plaintiff of his constitutional rights.  *Simonton v. Tennis*, 437 F. App'x 60, 63 (3d Cir. 2011).

was incarcerated," (*id.* ¶ 101), and Rispoli, Drace, and Gill are corrections officers at JTVCC who allegedly "oversaw and participated in the cruel and inhumane treatment of Plaintiff McCoy," (*id.* ¶¶ 103, 105, 107).   Count VI is identical to Count III of the Original Complaint.   (*Compare id.* at 77, *with* D.I. 1 at 51-52).   Moreover, with the exceptions noted below, the relevant supporting allegations remain the same as well.

Count VI alleges that the DOC Defendants:

> "with the intent to deprive Plaintiff McCoy of his constitutional rights under the Fourth, Fifth and Fourteenth Amendments[,] unlawfully detained [him], and subjected him to inhumane treatment, and cruel and unusual punishment, including, physical[] abuse, emotional abuse, psychological abuse, beatings, assault, torture, solitary confinement for excessive periods of time, and deprived him of his right to counsel and his right to a fair trial."

(D.I. 66 ¶ 351).   Plaintiff further alleges that the DOC Defendants, along with unnamed others, "held [him] in solitary confinement in the Special Housing Unit at the [JTVCC], ('SHU'), knowing that such solitary confinement was causing psychological and physical damages to [him]" and "intentionally subjected [him] to an environment in which corrections officers and other inmates provoked and assaulted [him], physically and emotionally abused him, spat in his food, searched and seized his possessions, including his communications with his defense attorneys, and subjected [him] to other torturous indignities, psychological and physical abuse." (*Id.* ¶¶ 13-14; *see also id.* ¶¶ 259-270).   Plaintiff also alleges he "was rarely permitted to leave his cell, was denied his rights to privacy, to visit the law library, and to legal counsel, and was generally treated cruelly and inhumanly throughout the period of his detention." (*Id.* ¶ 14; *see also id.* ¶¶ 259-270).   Finally, Plaintiff alleges that the DOC Defendants "provoked [him], and charged him with, and convicted him of disciplinary violations without just cause or due process." (*Id.* ¶ 271).   These allegations are identical to those made in the Original Complaint, with one exception – Plaintiff added the

allegation that the DOC Defendants "searched and seized his possessions, including his communications with his defense attorneys." (*Id.* ¶ 14).

"Section 1983 provides a cause of action against 'every person who,' under the color of state law, 'subjects or causes to be subjected,' another person to a deprivation of a federally protected right." *Barkes v. First Correctional Medical, Inc.*, 776 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds*, 135 S. Ct. 2042 (2015). The Third Circuit has repeatedly instructed that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 676). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own action, has violated the Constitution." *Id.* Two exceptions to this bar on supervisor liability exist:

> First, "liability may attach if [a supervisor-defendant], 'with deliberate indifference to the consequences, established and maintained a policy, practice, or custom which directly caused [the] constitutional harm." Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."

*Barkes*, 766 F.3d at 316 (alterations in original) (citations omitted). A plaintiff's complaint, however, must go beyond generalized accusations – it must "state[] the conduct, time, place, and persons responsible" for the wrongdoing. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980)).

Moreover, to the extent a plaintiff asserts a claim for cruel and unusual punishment, an official may only be held liable for failure to supervise if the plaintiff sufficiently alleges: (i) "a supervisory policy or practice that the supervisor failed to employ"; (ii) "the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation";

(iii) "the defendant-official was aware that the policy created an unreasonable risk of a constitutional violation"; (iv) "the defendant was indifferent to that risk"; and (v) "the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes*, 766 F.3d at 317 (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).[15]

Count III of the Original Complaint, which mirrors Count VI here, was insufficient because, as against Coupe and Pierce, the claims were "based solely on *respondeat superior*," and as against Rispoli, Drace, and Gill, Plaintiff "fail[ed] to plausibly allege that [any of the three] was personally responsible for" the claimed treatment of Plaintiff or "how each, if any, are liable for" that treatment, and "failed to differentiate between" their alleged actions. *McCoy v. Favata*, 2019 WL 1429570, at *12-13. The same issues persist in the Amended Complaint with regard to Coupe and Pierce. With regard to Rispoli, Drace, and Gill, however, Plaintiff has alleged that each of the three was personally involved in alleged misconduct, and though his allegations are somewhat conclusory, the Court finds that they allege sufficient facts to survive a motion to dismiss.

### 1.   Defendants Coupe & Pierce

In the Amended Complaint, Plaintiff again relies on *respondeat superior* to hold Coupe and Pierce liable. For Coupe, Plaintiff makes no modification to his original allegation – that Coupe became "Commissioner of the Department of Corrections beginning in March 2013, and thus oversaw the cruel and inhumane treatment of Plaintiff McCoy while he was incarcerated."

---

[15]   Although *Sample* and *Barkes* provide the standard for "hold[ing] a defendant liable under the Eighth Amendment," *Barkes*, 766 F.3d at 317, and Count VI asserts claims under the Fourth, Fifth, and Fourteenth Amendments, (D.I. 66 ¶ 351), it also states that "Defendants . . . subjected him to . . . cruel and unusual punishment," (*id.* at 77), which is barred by the Eighth Amendment, U.S. CONST. amend. VIII.

(*Compare* D.I. 66 ¶ 90, *with* D.I. 1 ¶ 72).  For Pierce, Plaintiff modifies his allegation, stating (with the new language underlined):

> "Defendant Pierce <u>with deliberate indifference to the consequences, established and maintained policies and procedures at the Delaware Department of Corrections that permitted and encouraged the hiring of incompetent and unqualified corrections [sic], failed to train or supervise corrections officers, and encouraged corrections officers at the JTVCC to beat, torture, taunt, and otherwise abuse inmates at that facility.  Defendant Pierce thus</u> oversaw the unconstitutional, cruel and inhumane treatment of Plaintiff McCoy while he was incarcerated."

(*Id.* ¶ 102).  The new language, however, essentially states the standard for supervisory liability, but adds no factual content to support such a claim against Pierce.  Such allegations are not sufficient.  *Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

Thus, apart from their roles as Commissioner and Warden, Plaintiff fails to provide any factual support for the assertion that Coupe or Pierce had personal involvement – in a supervisory capacity or otherwise – in any of the alleged wrongdoing.  Merely asserting that they "oversaw" wrongdoing or, for Pierce, "established and maintained policies and procedures" that permitted or encouraged wrongdoing and "thus oversaw" wrongdoing, are not plausible factual allegations, and may be disregarded under *Iqbal*.  *Id.*  Additionally, Plaintiff makes no allegation at all that Coupe, and no factual allegation that Pierce, "established and maintained a policy, practice, or custom" that directly caused injury to Plaintiff, and thus cannot satisfy the first exception for supervisory liability.  He also cannot satisfy the second, as he has failed to provide facts to indicate that either Coupe or Pierce personally participated in wrongdoing against Plaintiff, directed others to engage in wrongdoing against Plaintiff, or knew others were violating Plaintiff's constitutional rights and acquiesced to that wrongdoing.  In short, Plaintiff's allegations against Coupe and Pierce are generalized, lacking any information regarding the "conduct, time, place, [or] person" responsible

for wrongdoing inflicted against him.  *See Evancho*, 423 F.3d 353.  For these reasons, Count VI must be dismissed as to Coupe and Pierce.

### 2.    Defendants Rispoli, Drace, & Gill

Count VI as to Rispoli, Drace, and Gill presents a closer call.  The corrections officers make two arguments in favor of dismissal.  First, they argue that Plaintiff has failed to plausibly assert claims against them because the Amended Complaint does not sufficiently allege their personal involvement in any wrongdoing and does not provide the necessary factual support to satisfy the *Iqbal*/*Twombly* standard.  (D.I. 71 at 7-9).  Second, they assert that they are entitled to qualified immunity.  (*Id.* at 10-13).

As to the first argument, the Court noted in its First Opinion that Plaintiff "generally allege[d] that 'Prison Defendants' violated Plaintiff's rights in a number of ways, including beatings, abuse, spitting in his food, denying medical care, and denying access to his legal counsel, . . . but provide[d] no specific allegations as to Rispoli, Drace, or Gill." *McCoy v. Favata*, 2019 WL 1429570, at *13.  The Amended Complaint makes similar collective assertions that the "Prison Defendants subjected Plaintiff McCoy to an environment in which [unnamed] corrections officers and other inmates provoked and assaulted Plaintiff McCoy, physically and emotionally abused him, spat in his food, searched and seized his possessions, including his communications with his defense attorneys, and subjected [him] to other torturous indignities, psychological and physical abuse." (D.I. 66 ¶ 14).  Plaintiff has also added, however, a new allegation against each of the corrections officers – that "[a]t times unknown to Plaintiff but known to the defendants" each of Rispoli, Drace, and Gill "violated Plaintiff McCoy's civil rights by beating, torturing, taunting and otherwise abusing [him]." (D.I. 66 ¶¶ 104, 106, 108).  Although Plaintiff employs an identical allegation for each of the three, these new allegations – in contrast to the collective ones mentioned above – accuse Rispoli, Drace, and Gill individually of the misconduct alleged.  As such, they do

more than create a dispute regarding the possibility that each officer participated in misconduct. At this stage, in conjunction with Plaintiff's other allegations of mistreatment at the corrections center, that is sufficient.

Similarly, the Court will not dismiss Count VI against Rispoli, Drace, or Gill on the basis of qualified immunity at this time.  The DOC Defendants argue that they are entitled to qualified immunity because Plaintiff has failed to meet the "personal involvement" requirement of a § 1983 claim and, alternatively, to the extent Plaintiff's claims rely on his placement in solitary confinement, that placement was "objectively reasonable."  (D.I. 71 at 10-12).  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  The question of "whether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law that is properly answered by the court, not a jury." *Curley v. Klem*, 499 F.3d 199, 211 (3d Cir. 2007).  "[I]t is generally unwise[, however,] to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009); *accord Santiago v. MacNamara*, No. 14-795-RGA, 2015 WL 4036200, at *2 (D. Del. July 1, 2015).

As discussed, Plaintiff has sufficiently pleaded a case against Rispoli, Drace, and Gill; thus, Plaintiff's first argument is moot.  Additionally, a full analysis of whether qualified immunity applies to Plaintiff's claims in Count VI against the corrections officers is premature because – as the DOC Defendants' second argument makes clear – unresolved questions of fact relevant to the analysis remain.  *See Santiago*, 2015 WL 4036200, at *2.  Accordingly, the Court will deny the DOC Defendants' motion to dismiss Count VI as to Rispoli, Drace, and Gill on the grounds of

qualified immunity at this stage of the litigation, without prejudice to their ability to later raise the defense. *Id.* at 3.

Thus, the Court will deny the DOC Defendants' motion to dismiss Count VI as to Rispoli, Drace, and Gill.

### E.  Count VII: Malicious Prosecution Against Defendant DiGirolomo

Count VII is directed to Defendant DiGirolomo.  DiGirolomo was not mentioned in the Original Complaint; he was added as a defendant in the Amended Complaint.  (*Compare* D.I. 1, *with* D.I. 66).  Per the Amended Complaint, DiGirolomo was, at all relevant times, a corporal in the Dover, Delaware Police Department.  (D.I. 66 ¶¶ 78, 354).  He worked with the DSP, including Ryde, on the Governor's Task Force.  (*Id.*).  In 2009, DiGirolomo was the arresting officer and actively involved in the investigation of Plaintiff for weapons violations.  (*Id.* ¶¶ 79, 110, 354).  In 2010, he was one of the first responders to the scene of Mr. Munford's murder, holding the scene until it was taken over by Ryde and the DSP.  (*Id.* ¶¶ 73, 354).  After Mr. Munford's murder, DiGirolomo provided a photograph of Plaintiff to Ryde, which Ryde then showed to witnesses White and Williams.  (*Id.* ¶¶ 80, 354).  DiGirolomo allegedly provided the photograph "with little to no description of the suspect" and "knowing that Plaintiff . . . was not responsible for the homicide."  (*Id.* ¶¶ 116, 354).  Plaintiff alleges that providing this photo "demonstrates DiGirolomo's vendetta against [him]."  (*Id.* ¶¶ 118, 354).

Plaintiff further alleges that DiGirolomo conspired with Ryde and Weaver, and former Defendant Favata, "to execute the vendetta against [Plaintiff], resulting in the decisions of the Defendants to 'set up', frame, and charge [Plaintiff] with the homicide of Mr. Munford; and to seek the death penalty against [Plaintiff], and set in motion the flagrant, outrageous, and

unconstitutional misconduct that pervaded the entirety of the investigation, trial, sentencing, incarceration, and retrial of [Plaintiff]." (*Id.* ¶ 120).

These allegations fail to state a claim for malicious prosecution against DiGirolomo for two reasons. First, as discussed *supra*: malicious prosecution claims require, *inter alia*, that the underlying criminal proceeding have been "initiated without probable cause," *DiBella*, 407 F.2d at 601 (citing *Estate of Smith*, 318 F.3d at 521); Plaintiff's indictment "constitutes prima facie evidence of probable cause," *Rose*, 871 F.2d at 353; and Plaintiff has failed to show that the indictment was procured by fraud, perjury, or other corrupt means, or that his arrest warrant contains material misstatements, errors, or omissions. Thus, for the same reason that Plaintiff has failed to state a claim for malicious prosecution against Ryde, he has failed to state such a claim against DiGirolomo. Second, DiGirolomo is entitled to dismissal of Count VII on statute of limitations grounds.

Section 1983 suits are subject to the state statute of limitations period for personal injury claims. *Owens v. Okure*, 488 U.S. 235, 245-50 (1989). In Delaware, that period is two years. 10 *Del. C.* § 8119. Federal law, however, dictates when a § 1983 claim accrues; that is, when the statute of limitations clock begins to run. *Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir. 1998). Under federal law, "malicious prosecution . . . claims do not accrue until the criminal proceedings have terminated in [the plaintiff's] favor." *Floyd v. AG of* Pennsylvania, 722 F. App'x 112, 114 (3d Cir. 2018) (citing *Humphrey v. Heck*, 512 U.S. 477, 489 (1994)). Furthermore, a court may only dismiss a complaint under Rule 12(b)(6) based on expiration of the statute of limitations when such expiration is "apparent on the face of the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

Here, Plaintiff was acquitted of Mr. Munford's murder on January 19, 2017.  (D.I. 66 ¶ 255).  He filed his Original Complaint on July 28, 2017, but only added claims against DiGirolomo on April 22, 2019 when he filed the Amended Complaint. (*Compare* D.I. 1, *with* D.I. 66).  The Original Complaint was plainly filed within the requisite two years; the Amended Complaint was plainly not.  Thus, the question is whether Plaintiff's is entitled to the earlier date for purposes of his claims against DiGirolomo – *i.e.* whether the allegations in Count VII "relate back" to the claims in the Original Complaint.

Rule 15(c) of the Federal Rules of Civil Procedure "allows for the 'relation back' of certain amendments to pleadings that were filed during the statutory limitation period." *Averill v. Jones*, C.A. No. 12-599 (MN), 2019 WL 3804686, at *3 (D. Del. Aug. 13, 2019).  As an initial matter, courts have consistently held that the burden of proof for relation back falls upon the plaintiff. *Id.* (citations omitted); *accord Cotton v. Allegheny Cnty*, C.A. No. 11-969, 2012 WL 4755030, at *5 (W.D. Pa. Oct. 4, 2012) (citations omitted).

"Under Rule 15(c)(1)(C), an amendment that changes the party or the naming of the party in an action relates back to the original pleading only if a plaintiff can show: (1) the claim set forth in the amended pleading arose out of the conduct, transaction, or occurrence in the original pleading; (2) within [90][16] days of the filing of the complaint, the [defendant] received notice of the institution of the suit and would not be prejudiced in maintaining a defense; and (3) the [defendant] knew that, but for a mistake concerning [his] identit[y], [he] would have been made a party to the action." *Averill*, 2019 WL 3804686, at *3 (citing *Garvin v. City of Philadelphia*, 354

---

[16]     The time for serving a defendant was "reduced from 120 days to 90 days." *See* Fed. R. Civ. P. 4(m) advisory committee's notes to 2015 amendment.

F.3d 215, 222 (3d Cir. 2003) (citing *Singletary v. Pennsylvania Dept. of Corr.*, 266 F.3d 186, 194 (3d Cir. 2001)).

Plaintiff fails to show that DiGirolomo had notice of this suit within 90 days of its original filing.  Notice under Rule 15(c)(1)(C) "does not require actual service of process . . . [it] may be deemed to have occurred when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means." *Singletary v. Penn. Dep't of Corrections*, 266 F.3d 186, 195 (3d. Cir. 2001) (citations omitted); *accord Averill*, 2019 WL 3804686, at *3.  "At the same time, the notice received must be more than notice of the event that gave rise to the cause of action; it must be notice that the plaintiff has instituted the action." *Singletary*, 266 F.3d at 195 (citations omitted).  Plaintiff argues that "this was an extremely high-profile case – the exoneration of Mr. McCoy made local headlines and DiGirolomo knew of his involvement in the arrest of Mr. McCoy[;] [a]s such, he had notice of a potential action and, as this case is in its early stages of litigation, he will suffer no prejudice in defending the action on the merits."  (D.I. 90 at 7).  This, however, is exactly the sort of argument the Third Circuit has deemed insufficient.  Whether DiGirolomo had notice of Plaintiff's exoneration is irrelevant; the question is whether he had sufficient notice of this lawsuit.  As the above is the extent of Plaintiff's argument and he has the burden, it fails.[17]

---

[17]    Moreover, even if properly argued, DiGirolomo cannot be considered to have received notice of the litigation – there is no indication he was served with the Original Complaint or otherwise received actual notice of this suit, or that it would be proper to impute notice on him.  The Court may impute notice under Rule 15(c)(1)(C) if DiGirolomo was represented at any time during the relevant 90-day period by the same attorney as one of the originally-named defendants, or if he and the original defendants "are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *See Averill*, 2019 WL 3804686, at *3-5.  DiGirolomo does not share legal counsel with any of the other Defendants and, although he was purportedly part of the "Governor's Task Force" with Ryde and other members of the DSP, he is (and was) a member of a different police department and there

Plaintiff also fails to show that DiGirolomo knew, but for a mistake concerning his identity, he would have been made a party to the action. A "mistake" for these purposes may "flow[] from a lack of knowledge" or "inaccurate description." *Averill*, 2019 WL 3804686, at *5 (citing *Arthur v. Maersk, Inc.*, 434 F.3d 196, 208 (3d Cir. 2006)).   Amendments still only relate back to the original pleading, however, "if the party had had adequate notice of the action and should have known that it would have been named in the complaint but for a mistake." *Id.* (citing *Arthur*, 434 F.3d at 209.   Thus, "even where a mistake is found, the mistake must be made in conjunction with notice to the putative defendants, such that they 'should have known' they would have been named." *Id.*   Plaintiff argues that "[b]ased on DiGirolomo's involvement and knowledge of the incident, he had notice and should have known that an action would be brought against him." (D.I. 90 at 7).   This argument is off the mark.   The question is not whether he "should have known" that a lawsuit was possible, but whether he knew that he would have been named in the Original Complaint but for a mistake.   The Original Complaint does not describe anyone like DiGirolomo, nor the actions he is alleged to have carried out.   All such details were added via the Amended Complaint.   It defies logic that a complaint devoid of specific allegations against such a person could be said to put anyone on notice such that they should have known they would have been named but for a mistake.   *See Averill*, 2019 WL 3804686, at *5.

Accordingly, Plaintiff has failed to establish that his malicious prosecution claims against DiGirolomo relate back to the Original Complaint.   Thus, Count VII is barred by the statute of

---

is no allegation that he had any supervisory or administrative responsibilities for the task force.   *See id.* at *5 ("Courts have routinely held that non-management-level employees do not share a sufficient nexus of interest with their employer to allow for imputed notice absent some other circumstances that permit such an inference.") (citations omitted).

limitations.  For this reason, as well as because Plaintiff has failed to allege the absence of probable cause for his arrest and prosecution, Plaintiff has failed to state a claim in Count VII.

### F.     Count IX: Malicious Prosecution Against Defendant Weaver

Count IX is directed to Defendant Weaver.  Weaver was a prosecutor at Plaintiff's first murder trial.  (D.I. 66 ¶ 48).  She "knew of, and participated in, [most] of Favata's conduct[] as alleged," (*id.* ¶ 49), including, in conjunction with other Defendants, "offer[ing] sweet plea deals to White and Williams if they testified that Plaintiff McCoy was responsible for the homicide," (*id.* ¶ 66), "deci[ding] . . . to 'set up', frame, and charge Mr. McCoy with the homicide," (*id.* ¶ 120), "deci[ding] . . . to seek the death penalty," (*id.*), "employ[ing] discredited interrogation techniques including lying to White and Williams in order to induce them to provide false testimony against Plaintiff McCoy," (*id.* ¶ 155), "fail[ing] to conduct even the most fundamental investigation" into the Munford murder, (*id.* ¶¶ 160-62), "ignor[ing] exculpatory evidence," (*id.* ¶¶ 176-77), and generally "engag[ing] in egregious and pervasive misconduct throughout the investigation and First Trial of Plaintiff McCoy" for the murder, (*id.* ¶ 183).  Plaintiff does not identify the purported "egregious and pervasive misconduct" undertaken by Weaver but alleges she "was present throughout the trial and passively observed, permitted, enabled, and participated in Defendant Favata's misconduct."  (*Id.* ¶ 184).

Plaintiff asserts that during the trial court's admonishment of Favata for misconduct towards McCoy, the Court addressed Favata directly and stated "[y]ou, sir, are an experienced trial lawyer and I expect some better conduct out of you and Ms. Weaver [co-counsel] to some extent.  Ms. Weaver is less culpable than you are in my opinion."  (*Id.* ¶ 192).  Plaintiff concludes "Weaver was present for[]and participated by commission or omission in all of Defendant Favata's misconduct during Plaintiff McCoy's First Trial, and adopted, acquiesced in, ratified, covered up,

failed to prevent and deliberately failed to report that misconduct." (*Id.* ¶ 218). Lastly, the Amended Complaint alleges that, following the conviction at the first trial, despite "kn[owing] that the verdict and sentence . . . were achieved by egregious misconduct and . . . [that] McCoy was innocent," Weaver "bragged to the press" by saying "[a]ll the evidence that was taken together with corroborated testimony put together the crime as it happened" and "[t]he *pro se* factor was very challenging." (*Id.* ¶¶ 206-08).

Count IX asserts a § 1983 claim for malicious prosecution. (*Id.* at 81). The count also, however, appears to assert a claim against Weaver for violation of Plaintiff's right to effective assistance of counsel during his first trial for Munford's murder. (*Id.* ¶ 371 (invoking Plaintiff's right "under the Fourth and Fourteenth Amendments . . . to counsel")).[18] All of these claims, however, are insufficiently pleaded.

First, malicious prosecution claims require, *inter alia*, that the underlying criminal proceeding have been "initiated without probable cause." *DiBella*, 407 F.2d at 601 (citing *Estate of Smith*, 318 F.3d at 521). As discussed *supra*, Plaintiff's indictment "constitutes prima facie evidence of probable cause," *Rose*, 871 F.2d at 353, and Plaintiff has failed to show that it was procured by fraud, perjury, or other corrupt means, or that his arrest warrant contains material misstatements, errors, or omissions. Thus, for the same reasons Plaintiff has failed to state a claim for malicious prosecution against Ryde, he has failed to state such a claim against Weaver.

Second, Plaintiff has also failed to state a claim against Weaver for violating his right to effective assistance of counsel. Section 1983 liability must be premised on a defendant's personal

---

[18]     For purposes of this analysis, the Court sets aside the fact that the right to effective assistance of counsel during a criminal prosecution is secured by the Sixth Amendment, not the Fourth. *Henderson v. Frank*, 155 F.3d 159, 165-66 (3d Cir. 1998); *United States v. Bango*, 386 F. App'x 50, 52 (3d Cir. 2010).

involvement in the alleged wrongdoing. *See Evancho*, 423 F.3d at 353; *accord McCoy v. Favata*, 2019 WL 1429570, at *5. A limited exception for supervisory liability exists; however, that exception only applies if the accused "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in subordinates' violations." *Thomas v. Bd. of Educ. of Brandywine Sch. Dist.*, 759 F. Supp. 2d 477, 496 (D. Del. 2010) (citing *A.M.*, 372 F.3d at 586); *accord McCoy v. Favata*, 2019 WL 1429570, at *10.

The Third Circuit has further instructed, however, that "except perhaps in unusual circumstances, a government official or employee who lacks supervisory authority over the person who commits a constitutional tort cannot be held, based on mere inaction, to have 'acquiesced' in the unconstitutional conduct." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *accord Simpson v. City of Coatesville*, No. 10-0100, 2010 WL 3155307, at *14 (E.D. Pa. July 28, 2010) ("'Actual knowledge and acquiescence' will result in liability only where the person sued has direct supervisory authority over the person who violated the plaintiff's rights." (citing *Robinson*, 120 F.3d at 1294)). "And, *a fortiori*, if entities and supervisors may not be vicariously liable under § 1983 for the constitutional violation of a given individual, neither may that individual's cohorts who happen to be in the immediate vicinity." *Jutrowski v. Twp. Of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) (citing *Anela v. City of Wildwood*, 790 F.2d 1063, 1067-68 (3d Cir. 1986) (observing that defendants may "not be held liable under section 1983 merely because they were members of a group of which some other members were guilty of abuses" (citing *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976)))).

The Amended Complaint pays lip service to this "personal involvement" requirement for Weaver but fails to meet it. The Amended Complaint alleges that Weaver "passively observed,

permitted, enabled and participated in Defendant Favata's misconduct." (D.I. 66 ¶ 184). The rest of the Amended Complaint – and Plaintiff's brief – however, makes clear that the "participation" Plaintiff alleges is inaction. (*See id.* ¶ 189 ("Defendant[] Weaver . . . remained silent, participating in Favata's threat and deception."); *id.* ¶ 366 (alleging Defendant Weaver violated Plaintiff's right to effective assistance of counsel by "agree[ing]" with Favata's conduct, evinced by her: (i) "watch[ing] in tacit agreement," "implicitly permit[ing]," and "fail[ing] to report" Favata's conduct; and (ii) standing "by in silence while Favata lied to the Court about his conduct, though she had a duty to disclose" it); D.I. 80 at 13 ("She watched Favata in trial – degrade McCoy, lie to the Court about his conduct, yet did nothing, evincing her complicity and agreement in this outrageous conduct.")). And the Amended Complaint provides no factual allegations to support Plaintiff's conclusory assertion that Weaver "participated" in former Defendant Favata's alleged wrongdoing, nor does it provide any allegations that Weaver directed others to violate Plaintiff's rights or was in a supervisory position with respect to Favata. As such, Plaintiff's allegations regarding Weaver are insufficient to state a claim under section 1983. *See, e.g.*, *Jutrowski*, 904 F.3d at 290; *Robinson*, 120 F.3d at 1294. Thus, the Amended Complaint fails to state a claim against Weaver for violating Plaintiff's right to effective assistance of counsel.[19]

For the foregoing reasons, Plaintiff has failed to state a claim against Weaver in Count IX.

## G.   Count X: Malicious Prosecution Against Defendant Denn

Count X is directed to Defendant Matthew Denn. Denn was the Attorney General for the State of Delaware from January 2015 through January 2017. (D.I. 66 ¶ 25). Plaintiff asserts that Denn and his predecessor "failed to supervise, failed to properly train, and retained Favata as a

---

[19]    To the extent Plaintiff intends to set forth any other constitutional claims based on Weaver allegedly using "discredited interrogation techniques" or "bragging to the press," the issues identified in the First Opinion persist. *McCoy v. Favata*, 2019 WL 1429570, at *9-10.

prosecutor." (*Id.* ¶¶ 32, 370-375). Denn purportedly "implemented and oversaw policies and procedures . . . that failed ensure [sic] that rogue prosecutors such as Defendant Favata were properly supervised and thus permitted Favata[] to violate the constitutional rights of individuals such as Plaintiff McCoy." (*Id.*). Plaintiff further alleges that Denn established and maintained policies and practices at the Delaware Department of Justice – "with deliberate indifference to the consequences" – that "permitted prosecutors to offer and accept guilty pleas from defendants they knew could not be proved to be guilty and who were not guilty" and "ignored known misconduct by, permitted the retention of, failed to supervise, rewarded, and protected known rogue prosecutors, including specifically Defendant Favata, and with the consequence that Favata was permitted and encouraged to violate Plaintiff McCoy's constitutional rights." (*Id.* ¶¶ 33, 35, 370-375). Plaintiff also faults Denn for supposedly taking "no action to punish Defendant Favata," "rewarding" him "by allowing him to retire with full benefits," "protecting him from service of process" in this action, and "endors[ing]" his misconduct by "permitting him to retire . . . with full benefits." (*Id.* ¶¶ 7, 35, 370-375). Lastly, Plaintiff contends that Denn hired Defendant Smith and appointed Defendant Babowal "specifically for the prosecution of Plaintiff McCoy, (*id.* ¶¶ 30-31), that Denn sought to retry Plaintiff after the Supreme Court of Delaware reversed his conviction, (*id.* ¶ 233), and that Denn later authorized a plea offer of manslaughter to Plaintiff for political reasons, (*id.* ¶ 249). (*Id.* ¶¶ 370-375).

Count X asserts a claim for malicious prosecution against Denn, (*id.* ¶ 370); however, it also appears to assert claims for maintaining a policy of prosecuting innocent people (based on the decision to retry Plaintiff) and failing to train or supervise other Defendants, (*see id.* ¶ 371 (invoking Plaintiff's right "under the Fourth and Fourteenth Amendments . . . to life and liberty")). All of these claims, however, are insufficiently pleaded.

First, as discussed *supra*: malicious prosecution claims require, *inter alia*, that the underlying criminal proceeding have been "initiated without probable cause," *DiBella*, 407 F.2d at 601 (citing *Estate of Smith*, 318 F.3d at 521); Plaintiff's indictment "constitutes prima facie evidence of probable cause," *Rose*, 871 F.2d at 353; and Plaintiff has failed to show that the indictment was procured by fraud, perjury, or other corrupt means, or that his arrest warrant contains material misstatements, errors, or omissions. Thus, for the same reasons Plaintiff has failed to state a claim for malicious prosecution against Ryde, he has failed to state such a claim against Denn.

Second, as discussed in the First Opinion, Denn is absolutely immune from the allegations that he committed any offenses involving the decision to retry Plaintiff and to offer a plea deal for manslaughter. *McCoy v. Favata*, 2019 WL 1429570, at *5-6 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993); *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 552 (M.D. Pa. 2007) (finding negotiation of plea bargains conduct "intimately associated with . . . judicial phase of . . . criminal process")).[20]

Lastly, Plaintiff has failed to plead a claim against Denn for negligent hiring or failure to train or supervise because Plaintiff has not sufficiently pled an underlying constitutional violation. As already noted, "claims of negligent hiring, inadequate supervision, screening and training"

---

[20]     Both sides invoke the four-part test from *Sample v. Diecks*, 885 F.2d 1099, to argue this issue. (*See* D.I. 75 at 7-9; D.I. 80 at 8-9). As noted *supra* regarding Count VI, however, the *Sample* test applies to claims brought under the Eighth Amendment. *See Barkes*, 766 F.3d at 317. Count X asserts claims "under the Fourth and Fourteenth Amendments," (D.I. 66 ¶¶ 370-71), and, unlike Count VI, does not invoke rights protected by the Eighth Amendment. Furthermore, Plaintiff cannot use his brief opposing a Rule 12(b)(6) motion to dismiss to assert new theories or factual matter omitted from the Amended Complaint. *See, e.g.*, *McCoy v. Favata*, 2019 WL 1429570, at *8 (citations omitted). Moreover, even if claims against Denn were properly alleged under the Eighth Amendment, the Court has no need to reach them based on this analysis.

brought pursuant to § 1983 "must show that there was a constitutional violation." *L.H.*, 666 F. App'x at 217-18 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)); *accord McCoy v. Favata*, 2019 WL 1429570, at *6. As Plaintiff has not pleaded any underlying constitutional violations, any claim for negligent hiring, failure to train, or inadequate supervision by Denn also fails.

For the foregoing reasons, Plaintiff has failed to state a claim against Denn in Count X.

### H.     Count XIV: Civil Conspiracy Against Defendants Denn, Weaver, Ryde, DiGirolomo, Smith, and Babowal

Count XIV asserts a § 1983 civil conspiracy claim against Defendants Denn, Weaver, Ryde, DiGirolomo, Smith, and Babowal. (D.I. 66 at 88).[21] That claim is without merit because Plaintiff has failed to establish the necessary underlying constitutional violation. As addressed above, all other claims in the Amended Complaint are subject to dismissal and, "in the absence of an actual violation of a constitutional right under § 1983, Plaintiff's conspiracy claim necessarily fails," *Abreu*, 2020 WL 1271637, at *7 (citing *Perano*, 423 F. App'x at 239; *Gibbs*, 2004 WL 1328278, at *3, *aff'd*, 122 F. App'x 597 (3d Cir. 2005)); *accord Kovarik*, 2018 WL 1428293, at *10. Accordingly, Plaintiff has failed to state a claim for civil conspiracy in Count XIV.

## IV.     LEAVE TO AMEND

The Court is cognizant that leave to amend "shall be given freely when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citing Rule 15(a)); *accord* Fed. R. Civ. P. 15(a)(2); *McCoy v. Favata*, 2019 WL 1429570, at *14. Plaintiff, however, has been given an opportunity to cure the substantive issues pointed out here, and has failed to do so. Those issues, particularly Plaintiff's failure to overcome the presumptive validity of his indictment and arrest warrant, as

---

[21]     Count XIV also names former Defendant Favata, but, as noted *supra*, he has already been dropped from the suit.

well as his failure to provide factual support for the vast majority of his claims to satisfy his burden under *Iqbal*, pervade the Amended Complaint just as they did the Original Complaint.  Plaintiff's failure to address them despite multiple opportunities to do so doom his ability to attempt to do so again.  *See Foman*, 371 U.S. at 182 (noting that "repeated failure to cure deficiencies by amendments previously allowed" as grounds to dismiss with prejudice).  Thus, the portions of the Amended Complaint being dismissed will be dismissed with prejudice.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the motions to dismiss filed by the DSP Defendants (D.I. 72), the Prosecutor Defendants (D.I. 74), and Defendant DiGirolomo (D.I. 81) are GRANTED and the motion to dismiss filed by the DOC Defendants (D.I. 70) is GRANTED-IN-PART and DENIED-IN-PART. Plaintiff's Amended Complaint will be DISMISSED WITH PREJUDICE as to the DSP Defendants, the Prosecutor Defendants, and Defendants DiGirolomo, Coupe, and Pierce.[22]   An appropriate order will follow.

---

[22]      Given its analysis and findings, the Court does not address the parties' other arguments.